No. 95-3409

Four T's, Inc., doing                *
business as Dollar Rent              *
A Car of Little Rock,                *
                                     *
        Appellant,                   *
                                     *   Appeal from the United States
v.                                   *   District Court for the Eastern
                                     *   District of Arkansas.
Little Rock Municipal                *
Airport Commission,                  *
                                     *
        Appellee.                    *

                    Submitted:  April 10, 1996
                    Filed: March 13, 1997

Before McMILLIAN and FAGG, Circuit Judges, BURNS,* District
 Judge.

BURNS, District Judge.

        Four T's, Inc., doing business as Dollar Rent A Car of Little Rock
(Dollar), appeals the district court's[1] dismissal of each of Dollar's
federal causes of action against Little Rock Municipal Airport Commission
(Commission).

        Dollar contends the district court erred when it found Dollar failed
to state a claim under the Commerce Clause of the United States
Constitution, Art. 1, § 8, cl. 3; the Sherman Act, 15 U.S.C. §§ 1, 2, and
26; 49 U.S.C. § 47107 of the Airport and Airway

_____

        *The HONORABLE JAMES M. BURNS, United States District Judge
        for the District of Oregon, sitting by designation.

        The Honorable Susan W. Wright, District Judge for the Eastern
District of Arkansas.

Improvement Act of 1982, previously codified at 49 U.S.C. App. § 2210; and 42 U.S.C. § 1983.

The district court had jurisdiction under 28 U.S.C. § 1331, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We AFFIRM the judgment of the district court.

PROCEDURAL AND FACTUAL BACKGROUND

Dollar executed an Automobile Rental Concession Agreement (Agreement) with the Commission on August 15, 1990, in which the parties agreed Dollar could operate a car rental business at the Little Rock Regional Airport. The Commission agreed to lease Dollar counter space area in the airport terminal and thirty automobile parking spaces in an area adjacent to the terminal. Article I, Part C, Paragraph 3 of the Agreement also specifically provided:

> That the Concession granted by this Agreement is not exclusive and Lessor shall have the right to deal with and perfect arrangements with any other individual company or corporation for engaging in like activity at the Airport; provided, however, no other concession for auto rental operation shall be granted on more favorable terms and conditions than granted to the Concessionaire herein.

Dollar agreed to pay three types of fees or rents:

(1) $154.15 per month as rental for the counter space;

(2) $33.37 per month as rental for the parking spaces; and

(3) A "concessionaire fee" computed at the rate of $.076 per deplaning airline passenger for the first 30,000 passengers per month and $.071 per deplaning airline passenger for all passengers in excess of 30,000.

During November 1992, Dollar complained to the Commission and airport management about the Commission's method of calculating concession fees. The larger companies paid a much smaller

2

percentage of sales in concession fees than the smaller companies because the concession fee was based on the number of deplaning passengers without regard to the sales or other indicia of market strength of each rental car company. Dollar asserted this discrepancy was unfair, unreasonable, arbitrary, and unjustly discriminatory against Dollar, one of the smaller companies.

During the next several months, the Commission, Dollar, and other rental car companies discussed the concession fee structure. The Commission acknowledged that other airports use a method based on a percentage of base revenue rather than the number of deplaning passengers. Dollar contends airport management informally agreed to change the method of calculating the concession fee; however, changes were never made and the dispute continued.

The Commission eventually filed an unlawful detainer action in state court against Dollar for back rent, damages, and possession of property. Dollar, in turn, filed an action against the Commission in the United States District Court. The state court action was removed to federal court at Dollar's request, and the two actions were consolidated.

The Honorable Henry L. Jones, Jr., United States Magistrate Judge, found Dollar failed to state a claim under the Commerce Clause; the Sherman Act; the Airport and Airway Improvement Act of 1982; and 42 U.S.C. § 1983. Magistrate Judge Jones, therefore, recommended dismissal of Dollar's federal claims pursuant to Fed. R. Civ. P. 12(b)(6). Magistrate Judge Jones also recommended the district court decline to exercise supplemental jurisdiction over the remaining state contract claims as permitted by 28 U.S.C. § 1367(c)(3) and remand those claims to state court.

The district court reviewed the record de novo and adopted the magistrate's proposed findings and recommendations in their entirety. Accordingly, the district court found Dollar failed to

state a claim pursuant to the requirements of Fed. R. Civ. P. 12(b)(6) in the four federal causes of action and dismissed Dollar's complaint. The district court also remanded the contract claims to state court.[2] Dollar appealed.

## STANDARD OF REVIEW

We review de novo a district court's dismissal of a cause of action under Fed. R. Civ. P. 12(b)(6). First Commercial Trust Co., N.A. v. Colt's Mfg. Co., Inc., 77 F.3d 1081, 1083 (8th Cir. 1996).

## DISCUSSION

Dollar asserts the Commission's method of charging concession fees imposes an impermissible burden on interstate commerce; unreasonably restrains trade and competition; restrains new, smaller entrants from locating a rental car business at the airport; is unfair, unreasonable, and arbitrary; and unjustly discriminates against Dollar. Dollar contends, therefore, the Commission's method of charging concession fees violates the Commerce Clause, the Sherman Act, the Airport and Airway Improvement Act of 1982, and 42 U.S.C. § 1983.

## COMMERCE CLAUSE

Dollar contends the rental fees for the counter space and parking spaces should be considered separately from the concession fees that are based on the number of deplaning passengers. Although Dollar concedes the Commission is a market participant when it provides concession areas such as counter space and parking

---

[2]In addition, the district court rescinded the order that consolidated the Commission's unlawful detainer action against Dollar and the causes of action brought by Dollar. The district court also remanded the unlawful detainer action to state court. Neither party appealed those rulings.

4

spaces, Dollar maintains the Commission is a market regulator when it assesses concession fees based on the number of deplaning airline passengers. As a market regulator, the Commission would be subject to restraints under the Commerce Clause.

The Commerce Clause, which grants Congress the power to regulate commerce among the states, also limits the power of the states to erect barriers against interstate trade. Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 35 (1980). This limitation, commonly referred to as the dormant Commerce Clause, has an exception known as the market-participant doctrine. SSC Corp. v. Town of Smithtown, 66 F.3d 502, 510 (2d Cir. 1995), cert. denied, 116 S.Ct. 911 (1996). Both state and local governments can be market participants. Id. at 510 n.18 (citing White v. Massachusetts Council of Constr. Employers, 460 U.S. 204 (1983)). "[I]f a state is acting as a market participant, rather than a market regulator," the dormant Commerce Clause does not limit its activities. South-Central Timber Development v. Wunnicke, 467 U.S. 82, 93 (1984).

Dollar relies on Airline Car Rental v. Shreveport Airport Authority, 667 F.Supp. 303 (W.D. La. 1987), to support its contention that the Commission is acting as a market regulator when it assesses concession fees. In Airline Car Rental, the airport authority imposed a fee on rental car businesses that transported customers from the airport to the businesses' off-site facilities. The fee was calculated as seven percent of gross business receipts derived from the rental of cars to passengers picked up at the airport by the off-site rental car businesses. The court held the airport authority was not a market participant because it had only created a suitable marketplace for rental car services rather than entering the market itself. Id. at 306. Dollar's situation differs, however, from that of an off-site rental car business because Dollar actually operates from the airport terminal itself and rents counter space and parking spaces from the Commission.

Dollar also relied upon the Fifth Circuit's reasoning in <u>Smith v. Department of Agr. of State of Ga.</u>, 630 F.2d 1081 (5th Cir. 1980), <u>cert. denied</u>, 452 U.S. 910 (1981).  In <u>Smith</u>, the state of Georgia operated and partially financed a farmers' market.  When space at the market grew tight, the state decided to assign selling spaces based on residence and gave preference to Georgia residents.  The court concluded the state was a market regulator because it did not produce goods to be sold at the farmers' market and did not buy or sell goods there.  <u>Id.</u> at 1083.  We, however, find Judge Randall's dissent in <u>Smith</u> more persuasive.  Judge Randall noted the state had "entered into the economic market for the provision of physical marketplaces" and, as such, was acting in its proprietary role as "a participant in the market for marketplace space. It . . . [was] selling a service rather than a good." <u>Id</u>. at 1088.  In the case before us, we find the Commission's conduct is aptly characterized in a similar fashion.

The district court found the Commission acted in a proprietary capacity and, therefore, was not subject to the restraints of the Commerce Clause as a market participant.  The district court's decision was based primarily on the analogous facts and persuasive reasoning of the court in <u>Transport Limousine of Long Island, Inc. v. Port Auth. of N.Y. and N.J.</u>, 571 F.Supp. 576 (E.D.N.Y. 1983).  In <u>Transport Limousine</u>, the Port Authority charged limousine services eight percent of gross receipts in exchange for a permit to use counter space and telephone locations in the airport terminal.  The court held the Port Authority was a participant in the market for ground transport services because it provided facilities to limousine services.  <u>Id.</u> at 581.  In the case before us, the Commission is participating in the rental car market in a similar manner.  Although Dollar attempts to distinguish the Commission's role from that of the Port Authority in <u>Transport Limousine</u> by arguing the Commission's concession and rental fees should be considered separately, we are not persuaded by Dollar's argument.  The Commission chose to divide the fee required of car

rental businesses operating out of the terminal into three components: Two components based on the size of the physical facilities used by the company and one component based on the number of deplaning passengers. We are not aware of any rationale underlying the Commerce Clause that prevents the Commission from structuring its fees in this manner nor are we persuaded that such a fee structure subverts the Commission's role as a market participant.

Accordingly, we hold the Commission is a market participant and is not, therefore, subject to the restraints of the Commerce Clause.

SHERMAN ACT

The Commission asserts Dollar's cause of action brought under the Sherman Act is barred by the doctrine of state action immunity. In Parker v. Brown, the Supreme Court concluded the Sherman Act is directed against "individual not state action" and, therefore, does not nullify state powers. 317 U.S. 341, 352 (1943). Dollar, however, contends the Commission is a group of private individuals and, therefore, the Commission is only entitled to state action immunity if its conduct meets the standards set forth in the two-pronged test established in California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 105 (1980): (1) The challenged anticompetitive conduct must be supported by a clearly articulated and affirmatively expressed state policy; and (2) the state must actively supervise the policy.

Under Arkansas law, cities that own and operate an airport have the authority to create a commission "for the purpose of

operating and managing the airport and its relative properties and facilities." Ark. Code Ann. § 14-359-103. The Commission, in effect, acts as "an agency of the city with the power and authority

7

to operate, manage, maintain and improve" the airport unless the statute explicitly provides otherwise. L.C. Eddy, Inc. v. City of Arkadelphia, 303 F.2d 473, 475 (8th Cir. 1962). Thus, as the district court concluded, the Commission is entitled to be treated as a municipality.

State action immunity shields municipalities from antitrust liability under the Sherman Act when the municipality has the authority to regulate and to suppress competition. City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 370 (1991). See also Parker v. Brown, 317 U.S. at 352 (The Sherman Act was not intended to "restrain a state or its officers or agents from activities directed by its legislature."). Whether a municipality is entitled to state action immunity is determined by scrutinizing the municipality's conduct solely under the first prong of the Midcal test. Town of Hallie v. City of Eau Claire, 471 U.S. 34, 47 (1985). See also Paragould Cablevision, Inc. v. City of Paragould, Ark., 930 F.2d 1310, 1312 (8th Cir.), cert. denied, 502 U.S. 963 (1991). We find, therefore, the district court employed the correct analysis when it scrutinized the Commission's conduct to determine whether it was supported by a clearly articulated and affirmatively expressed state policy.

Ark. Code Ann. § 14-359-109 provides:

(a)(1) The commissioners appointed under this chapter shall have full and complete authority to manage, operate, improve, extend, and maintain the municipal airport and its related properties and facilities.
  (2) The commissioners shall have full and complete charge of the airport and its related properties and facilities, including the right to employ or remove any and all assistants and employees of whatsoever nature, kind, or character and to fix, regulate, and pay their salaries.

(b) It is the intention of this chapter to vest in the commissioners unlimited authority to operate, manage, maintain, improve, and extend the municipally owned airport and its related properties and facilities, and to have full and complete charge of it.

8

The statute clearly and affirmatively grants the Commission "unlimited authority" to operate the airport, its facilities and related properties, which would include renting counter space and parking spaces and imposing concession fees.

Dollar argues, however, the Commission is not entitled to state action immunity because its anticompetitive conduct is not a necessary and reasonable consequence of engaging in the authorized activity. See Paragould Cablevision, Inc., 930 F.2d at 1312. Dollar asserts the Arkansas legislature could not foresee the Commission would use its authority to establish a discriminatory concession fee structure that suppresses competition.

"[T]he Supreme Court has made clear that a specified, detailed legislative authorization of monopoly service need not exist to infer the necessary state intent." City of Lafayette v. Louisiana Power & Light Co., 435 U.S. at 415. "It is sufficient that 'the legislature contemplated the kind of action complained of.'" Paragould Cablevision, Inc., 930 F.2d at 1312 (citations omitted). "[T]he state policy to displace competition can be inferred 'if the challenged restraint is a necessary and reasonable consequence of engaging in the authorized activity.'" Scott v. City of Sioux City, 736 F.2d 1207, 1211 (8th Cir. 1984), cert. denied, 471 U.S. 1003 (1985) (citing Gold Cross Ambulance & Transfer v. City of Kansas City, 705 F.2d 1005 (8th Cir. 1983), cert. denied, 471 U.S. 1003 (1985)). See also City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. at 372 (anticompetitive conduct is sufficiently articulated as state policy if "suppression of competition is the 'foreseeable result'" of the conduct authorized by statute).

A reasonable and necessary part of the Commission's airport management is to provide a marketplace for rental car agencies to provide transportation for passengers deplaning at the airport. It is a reasonable and foreseeable consequence that the Commission

9

will impose rental and/or concession fees for the use of airport property. The Commission was granted unlimited authority by the state to determine those rental and/or concession fees. Although the Commission may not have used the most common method of computing concession fees when it based its charges in part on the number of deplaning passengers, we see no reason to consider the Commission's method of calculating fees unreasonable or unacceptable. Dollar cites no authority that requires the Commission to use a different method to calculate concession fees for rental car agencies that operate on site. We, therefore, find suppression of competition was foreseeable as a consequence of the Commission's exercise of its unlimited authority to operate the airport.

In summary, we hold a clearly-articulated and affirmatively-expressed state policy exists that grants the Commission unlimited authority to formulate and to impose concession fees on rental car companies that operate from the airport terminal; therefore, the first prong of the Midcal test is satisfied and the Commission is entitled to state action immunity from antitrust liability.

AIRPORT AND AIRWAY IMPROVEMENT ACT OF 1982

The Commission contends a private right of action is not available under 49 U.S.C. § 47107 of the Airport and Airway Improvement Act of 1982 (AAIA), previously codified at 49 U.S.C. app. § 2210; therefore, the district court did not err when it dismissed Dollar's cause of action under the AAIA. Dollar, however, argues assurances that prohibit discrimination are required by the AAIA, and those assurances are intended to protect concessionaires such as Dollar as well as to benefit aeronautical businesses and the Federal Aviation Administration; therefore, a private right of action is implied in the statute.

In Cort v. Ash, the Supreme Court established the test for

10

determining whether a private right of action is implicit in a statute that does not expressly provide one:

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," -- that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. 66, 78 (1975) (quoting Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 39 (1916)) (emphasis in the original) (internal citations omitted). "The critical inquiry . . . is whether Congress intended to create a private cause of action." Labickas v. Arkansas State University, 78 F.3d 333, 334 (8th Cir.), cert. denied, 117 S.Ct. 395 (1996) (citing Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 24 (1979)). A private right of action cannot be implied on the basis of the third and fourth factors alone. Interface Group, Inc. v. Massachusetts Port Authority, 816 F.2d 9 (1st Cir. 1987) (citing Transamerica Mortgage Advisors, Inc., 444 U.S. at 23).

The district court found no private right of action exists under the AAIA and dismissed the cause of action brought by Dollar under the AAIA. Although this is a case of first impression in the Eighth Circuit, the district court agreed with and adopted the reasoning in Northwest Airlines, Inc. v. County of Kent, 955 F.2d 1054 (6th Cir. 1992), aff'd on other grounds, 510 U.S. 355 (1994); Interface Group, Inc. v. Massachusetts Port Authority, 816 F.2d 9 (1st Cir. 1987); and Arrow Airways, Inc. v. Dade County, 749 F.2d 1489 (11th Cir. 1985). In each of these cases, the courts found none of the AAIA's provisions, including the requirement of various assurances of nondiscrimination, suggest the AAIA was intended to

11

benefit nonaeronautical parties such as car rental concessionaires;[3] the AAIA lacked language that "could run in favor of private plaintiffs"; and the AAIA's enforcement scheme did not suggest Congress intended to create a private right of action.  Interface, 816 F.2d at 15; Arrow Airways, Inc., 749 F.2d at 1490-91; Northwest Airlines, Inc., 955 F.2d at 1058-59.  See also Western Air Lines v. Port Auth. of N.Y. & N.J., 817 F.2d 222, 225 (2d Cir. 1987) (no private right of action exists unde the Airport and Airway Improvement Act of 1982), cert. denied, 485 U.S. 1006 (1988).  We agree with out sister circuits and find it unnecessary to repeat the analysis set forth in these cases and elaborated on by the district court.

Dollar also contends the administrative remedy found in the AAIA is not inconsistent with a private right of action.  Section 47107(g) rests enforcement authority with the Secretary of Transportation.  We find the Sixth Circuit's reasoning persuasive:  The fact that § 47107 requires the various written assurances of nondiscrimination to be given to the Secretary of Transportation "indicates that Congress intended to establish an administrative enforcement scheme" rather than a private right of action.  Northwest Airlines, Inc., 955 F.2d at 1058.

In summary, we find the district court did not err when it found Dollar was not one of the class "for whose especial benefit" the AAIA was enacted.[4]  We also find the district court did not err

---

[3]For example, car rental firms are mentioned in § 47107(e) in a provision that allows airport owners to require car rental firms to purchase or to lease goods and services from disadvantaged business enterprises.  This provision, however, benefits disadvantaged business enterprises rather than car rental agencies.

[4]The district court also noted the Federal Aviation Administration (FAA), in response to a complaint filed by Dollar, informed Dollar by letter dated February 3, 1994, that the AAIA was intended to benefit aeronautical users rather than nonaeronautical users such as car rental agencies.

12

when it found the statute contained no explicit or implicit legislative intent to create a private remedy under the AAIA. Accordingly, we hold the AAIA does not create a private right of action; therefore, the district court appropriately dismissed Dollar's cause of action brought under the AAIA.

42 U.S.C. § 1983

Dollar contends the district court erred when it found Dollar had no cause of action to enforce the AAIA under 42 U.S.C. § 1983.

A plaintiff may bring a private cause of action under § 1983 for violations of federal statutes. Maine v. Thiboutot, 448 U.S. 1, 7-8 (1980). In Howe v. Ellenbecker, this Court synthesized the Supreme Court holdings in Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 509 (1990), and Suter v. Artist M., 503 U.S. 347, 363 (1992), to create a comprehensive test for evaluating whether a federal statute is enforceable under § 1983. 8 F.3d 1258, 1262-63 (8th Cir. 1993), cert. denied, 114 S. Ct. 1373 (1994).

To be enforceable under § 1983, the statute at issue must intend to benefit the "putative plaintiff" and such an intent must be expressed in specific and mandatory terms. Howe, 8 F.3d at 1262 (citation omitted). In addition, the statute itself must provide "a comprehensive remedial scheme which leaves no room for additional private remedies." Howe, 8 F.3d at 1263 (citation omitted). Plaintiff's interest cannot be so "'vague and amorphous"' that it is beyond the power of judicial enforcement." Howe, 8 F.3d at 1262 n.5. (citations omitted).

Dollar contends it has a § 1983 remedy because the AAIA was intended to benefit rental car companies, the statute creates a

13

binding obligation, and the interest asserted by Dollar is not too vague to enforce. Dollar further contends the district court erroneously used the Cort test as the basis for its determination that Dollar did not have a cause of action under § 1983 to enforce § 47107 of the AAIA. Dollar, however, misreads the district court's analysis.

When the district court considered whether a private right of action exists under the AAIA, it found the AAIA was not intended to benefit concessionaires such as Dollar and other rental car businesses and (2) the legislative history and the statute itself contained no indication of a legislative intent, either explicit or implicit, to create a private remedy under the AAIA. Thus, the threshold factors under Cort and Howe for determining whether an implied private right of action exists under the AAIA and for determining whether § 1983 provides a remedy for alleged violations of the AAIA are identical. When the district court reached the § 1983 issue, it found it unnecessary to repeat its analysis. We find the district court's approach reasonable and agree that Dollar's arguments fail under the threshold inquiries of both Howe and Cort. We hold, therefore, the district court did not err when it dismissed Dollar's cause of action to enforce the AAIA under
§ 1983.

Dollar further contends it is entitled to enforce its rights under the Commerce Clause through § 1983. See Dennis v. Higgins, 498 U.S. 439 (1991) (claims for violation of the Commerce Clause may be brought under § 1983). We earlier found the Commission was a market participant and, as a result, not subject to the restraints of the Commerce Clause. Dollar, therefore, has no rights under the Commerce Clause to enforce.

14

<u>CONCLUSION</u>

Based on the foregoing, we AFFIRM the judgment of the district court.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

15