**CEDARHURST AIR CHARTER, INC., Plaintiff,**

v.

**WAUKESHA COUNTY, Defendant.**

**No. 99-C-1199.**

United States District Court, E.D. Wisconsin.

March 30, 2000.

John L. Kirtley, Arthur J. Harrington, Godfrey & Kahn, Milwaukee, WI, for plaintiff.

Robert F. Johnson, Raymond D. Jamieson, Cook & Franke, Milwaukee, WI, Eric J. Van Vugt, Kevin M. Long, Quarles & Brady, Milwaukee, WI, for defendants.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

Plaintiff Cedarhurst Air Charter, Inc. ["CAC"] operates its business out of Waukesha County Airport, which is owned by defendant Waukesha County. The county leases space at the airport to a "fixed base operator" ["FBO"], a private business that manages and operates the airport pursuant to a contract with the county. The county requires all owners who store their aircraft at the airport to buy fuel from the FBO; owners are not permitted to fuel their own planes, and fuel vendors other than the FBO are not allowed to do business at the airport.

These allegations, which are taken from the plaintiff's complaint and accepted as true only for present purposes, form the basis for CAC's claims that the county violated federal antitrust laws by conspir-

ing with the FBO to monopolize the market for aircraft fuel (Sherman Act § 2, 15 U.S.C. § 2) and creating an illegal tying arrangement (Sherman Act § 1, 15 U.S.C. § 1). The plaintiff also contends that the county is liable under 42 U.S.C. § 1983 for the denial of CAC's rights under Airport and Airway Improvement Act ["AAIA"], Federal Aviation Administration ["FAA"] regulations and the Commerce Clause. The county has moved to dismiss all of these claims pursuant to Rule 12(b)(6), Fed. R.Civ.P.

## I. FEDERAL ANTITRUST CLAIMS

The county asserts that CAC's antitrust claims are barred by the state action immunity from antitrust liability established by the Supreme Court in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In *Parker* the Court held that the Sherman Act did not apply to anticompetitive restraints imposed by the States " 'as an act of government.' " *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 370, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991) (quoting *Parker,* 317 U.S. at 352, 63 S.Ct. 307). This immunity does not directly apply to local governments, unless the municipality's restriction of competition is pursuant to a state policy. *Columbia,* 499 U.S. at 370, 111 S.Ct. 1344. For the immunity to apply, there must be a "clear articulation of a state policy to authorize anticompetitive conduct by the municipality". *Id.* at 372, 111 S.Ct. 1344. However, the relevant state statute need not explicitly permit the displacement of competition; it is enough if the displacement is the foreseeable result of what the statute authorizes. *Id.* at 372–73, 111 S.Ct. 1344.

In the present case, Wisconsin statutes grant the county broad authority to establish, operate and regulate a local airport. Wis.Stats. §§ 114.11(1) and 114.14(1). The county has the authority to "adopt regulations, and establish fees or charges for the use of the airport". § 114.14(1). The county has established an airport commission pursuant to § 114.14(2)(a), and the commission is empowered to "make such contracts or other arrangements as may be deemed necessary for the construction, improvement, equipment, maintenance or operation of the airport." § 114.14(3). The county argues that these airport statutes constitute a "sweeping grant of authority [that] anticipates anticompetitive conduct by local governments with respect to local airports, and therefore affords the County state action immunity to antitrust claims arising out of such conduct."

The plaintiff disagrees and argues that several statutes demonstrate the legislature's intent to forbid the allegedly anticompetitive conduct challenged here. One set of statutes relied upon by CAC is found in Wisconsin's antitrust laws, § 133.03 *et seq.,* Wis.Stats. Section 133.03 forbids, in language similar to that of the Sherman Act, agreements or conspiracies to restrain or monopolize trade, and its prohibitions apply to municipal governments. § 133.02(3); *American Medical Transport of Wisconsin, Inc. v. Curtis-Universal, Inc.,* 154 Wis.2d 135, 148, 452 N.W.2d 575 (1990) (hereafter *"AMT"*). The Wisconsin legislature has mandated that the statute be interpreted liberally to promote competition (*id.* at 151, 452 N.W.2d 575 (citing § 133.01)), and it has instructed "state regulatory agencies [to] regard the public interest as requiring the maximum level of competition in any regulated industry consistent with the other public interest goals established by the legislature." § 133.01.

I conclude that CAC's argument is correct. The county's claim of state action immunity is based only on the broad, general grant of authority by the legislature to the county with respect to airports. However, it is often difficult to distinguish between "a [state] regulatory program designed to supplant the operation of the free market [and] . . . one that can coexist happily with the full enforcement of federal antitrust principles". *Hardy v. City Optical Inc.,* 39 F.3d 765, 768 (7th Cir.1994). The state antitrust statutes cited by the

plaintiff suggest that the state legislature intended the latter as opposed to the former.

The county has failed to explain how its claims of state action immunity can be reconciled with state antitrust laws. The county criticizes the cases relied on by the plaintiff as irrelevant or too old, but a recent Wisconsin Supreme Court case (1990), not cited by the parties, supports the plaintiff's view. *See AMT*, 154 Wis.2d at 148–154, 452 N.W.2d 575. *AMT* discussed the interaction between broad grants of regulatory authority to municipal governments, on the one hand, and state antitrust law on the other. *AMT* involved a claim under state rather than federal antitrust law; therefore the defense of state action immunity, grounded in principles of federalism, was technically inapplicable. *See id.* at 145–46, 452 N.W.2d 575. Nevertheless, the ultimate question in that case was, just as it is here, whether the legislature intended to authorize the alleged anticompetitive conduct challenged by the plaintiffs. *Id.* at 146, 452 N.W.2d 575. *See also Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 44 n. 8, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985) (noting, in analyzing a claim of state action immunity under federal antitrust law, that a Wisconsin Supreme Court case applying state antitrust law was instructive on the question of the Wisconsin legislature's intent).

The plaintiffs in *AMT* were three ambulance companies who alleged that the defendant City of Milwaukee violated state antitrust law by assigning most of its ambulance work to four preferred companies (also defendants), thereby relegating the plaintiffs to back-up status. The trial court dismissed the complaint and the appellate court affirmed, holding that pursuant to the city's broad home-rule powers granted by § 62.11(5), the city had the authority to implement its ambulance system despite its anticompetitive effects.

The Wisconsin Supreme Court reversed, holding that the home-rule statute could not be construed as authorizing the city's anticompetitive, monopolistic regulation of ambulance service. *Id.* at 150–51, 452 N.W.2d 575. The court relied heavily upon the state's antitrust statutes and the strong pro-competitive policy that they reflected. *Id.* at 151, 452 N.W.2d 575. The court reasoned that "extraneous statues" must "quite clearly indicate" an intent to authorize anticompetitive conduct before it could find a municipality immune from state antitrust law. *Id.* at 151–52, 452 N.W.2d 575.

The home-rule statute at issue in *AMT* is more general than the airport statutes relied upon by the county in the present case. However, the court in *AMT* also opined that §§ 59.07 and 60.565, which grant towns and counties more specific authority to contract for ambulance services, do not authorize anticompetitive conduct. *Id.* at 152, 452 N.W.2d 575. Those statutes are similar to the statutes at issue here, and I reach the same conclusion as to the latter.

CAC argues that there is more statutory evidence to refute the county's claim that its actions are authorized by the state legislature. CAC contends that the same statutes which grant the county the authority to operate the airport also forbid the county from exercising that authority in a manner contrary to federal law. For example, § 114.11, which permits local governments to regulate local airports, provides that such regulations "shall not be in conflict with such rules and regulations as may be made by the federal government." Section 114.105, which authorizes local governments to enact ordinances for the regulation of airports, states that "[n]o local authority shall enact any ordinance governing aircraft or aeronautics contrary to or inconsistent with ... federal law."

According to CAC, the county's policy of requiring aircraft owners to purchase fuel from the FBO is contrary to several FAA regulations. One source of regulations, FAA Order 5190.6A, prohibits the county from refusing

to permit an air carrier, air taxi, or flight school to fuel its own aircraft.... [A]ircraft owners should be permitted to fuel ... their own aircraft. A restriction which has the effect of diverting such business to a commercial operator amounts to an exclusive monopoly of aeronautical activity contrary to law.

FAA Order 5190.6A, Section 2 at § 3–9d(1) and § 3–9e(1). The conduct at issue here could not have been intended by the state legislature, CAC argues, because federal regulations incorporated by §§ 114.11 and 114.105, Wis.Stats., specifically forbid it.

The county has not responded to the plaintiff's contention in its reply brief. Because I find no obvious flaws in the argument, I will credit it. *See Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994) (accepting appellee's plausible argument in favor of affirmance based on appellant's failure to respond to it).

I conclude that the county has fallen short of showing the type of "clear articulation of a state policy to authorize anticompetitive conduct" needed to support its defense of state action immunity. *See City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 372, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). I do not believe that this conclusion is inconsistent with any of the cases cited by the defendant. All of these cases except one involve dissimilar sets of statutes from other states.

The exception is *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). In that case the United States Supreme Court afforded state action immunity to the defendant only after concluding that the relevant Wisconsin statutes, which dealt with sewage services, "clearly contemplate that a city may engage in anticompetitive conduct." *Id.* at 42, 105 S.Ct. 1713. Before *City of Eau Claire*, the Wisconsin Supreme Court reached the same conclusion about the same sewage statutes in *Town of Hallie v. City of Chippewa Falls*, 105 Wis.2d 533, 314 N.W.2d 321 (1982), relied upon by the United States Supreme Court

in *City of Eau Claire*, 471 U.S. at 44 n. 8, 105 S.Ct. 1713. In *AMT*, the Wisconsin Supreme Court noted that the legislature's intent to displace competition was clear in *City of Chippewa Falls*, but was not in the case before it. 154 Wis.2d at 151–52, 452 N.W.2d 575. The airport statutes at issue here, like the statutes involved in *AMT* and unlike those in *City of Eau Claire* and *City of Chippewa Falls*, do not indicate a clear intent to permit anticompetitive conduct.

The defendant's motion to dismiss will be denied as to the plaintiff's federal antitrust claims.

## II. SECTION 1983 CLAIMS

### A. Section 1983 Claim under the AAIA and FAA Regulations

CAC's third cause of action is brought pursuant to § 1983 for alleged violations of its rights under FAA Order 5190.6A (quoted in relevant part above) and under the AAIA (49 U.S.C. § 47107). The plaintiff asserts that both the order, as well as certain "grant assurances" made by the county in order to receive federal funds under § 47107, give the plaintiff the right to fuel its own aircraft. The defendant contends that both the AAIA and the Federal Aviation Act ["FAA"] do not give rise to claims under § 1983. This mandates dismissal of not only the AAIA claim but also the claim based on the FAA Order, the county argues, because the FAA Order was promulgated primarily under the AAIA and the FAA.

The county identifies a number of cases which have held that § 47107 (or its predecessor § 2210) is not enforceable under § 1983. *See, e.g., Four T's, Inc. v. Little Rock Mun. Airport Comm'n*, 108 F.3d 909, 916 (8th Cir.1997); *Northeast Jet Center, Ltd. v. Lehigh–Northampton Airport Auth.*, 767 F.Supp. 672, 685–86 (E.D.Pa. 1991); *Rocky Mountain Airways, Inc. v. Pitkin Cty.*, 674 F.Supp. 312, 318 (D.Colo. 1987); *Hillman Flying Service, Inc. v. City of Roanoke*, 652 F.Supp. 1142, 1144

(W.D.Va.1987). *But see New York Airlines, Inc. v. Dukes Cty.*, 623 F.Supp. 1435, 1448 (D.Mass.1985) (holding that § 2210 (the predecessor to § 47107) could provide the basis for a § 1983 claim). The county also cites *Montauk–Caribbean Airways, Inc. v. Hope*, 784 F.2d 91, 98 (2nd Cir.1986), for its holding that provisions of the FAA, specifically 49 App.U.S.C. §§ 1305(a) and 1349(a), cannot give rise to a § 1983 action. There do not appear to be any cases from the Supreme Court or the court of appeals for the seventh circuit addressing whether the AAIA or the FAA create rights enforceable under § 1983.

Despite the number of cases that support the county's view, I am not prepared at this time to accept it. I believe that the cases cited by the defendant have limited precedential value here because each of them is either distinguishable, unpersuasive, outdated in light of more recent Supreme Court precedent, or some combination thereof. Before discussing these cases, however, I first turn to the analytical framework established by the Supreme Court for determining whether a federal statute or regulation creates rights that can be asserted in a § 1983 action.

 Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." In order to bring a § 1983 action, "a plaintiff must assert the violation of a federal right, not merely a violation of federal law." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); *accord Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 750 (7th Cir.1999). Determining whether a given statute establishes the type of right enforceable under § 1983 can be difficult, and the Supreme Court has confronted the subject many times over the past twenty years. The Court in *Freestone* synthesized its past precedents and gave the most recent articulation of the test:

We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. [*Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 430, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) ]. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. [*Id.* at 431–32][, 107 S.Ct. 766]. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms. [*Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 510–11, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) ].

520 U.S. at 340–41, 117 S.Ct. 1353 (parallel citations omitted).

If these requirements are met, there is a presumption that the plaintiff has a right enforceable under § 1983. *Id.* at 341, 117 S.Ct. 1353. However, the presumption may be rebutted if Congress intended to foreclose a remedy under § 1983. *Id.* Congress may do so expressly in the statute itself or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983. *Id.*

This court must analyze the relevant statutory scheme with these principles in mind in order to determine whether a § 1983 action is available. *Wiley*, 187 F.3d at 751. The county has not cited the Supreme Court's three-factor test, nor has it shown that any of the three factors favor dismissal of CAC's claim. The county does not argue that § 47107 or the FAA Order were not intended to benefit CAC; in fact, the defendant concedes that "CAC comes within the class of beneficiaries of the AAIA." Defendant's Reply Brief at 6 n. 2. The county does not contend that CAC's asserted right to self-fuel is "vague and

amorphous", and it does not appear to be. Finally, the county does not claim that § 47107 and the FAA Order do not impose binding obligations on the State.

I therefore must assume, for purposes of the present motion, that there is a rebuttable presumption that CAC has a right enforceable under § 1983. The presumption may be rebutted only if Congress intended to foreclose a remedy under § 1983. The county asserts that Congress has done so. Two of the cases cited by the defendant have held that the administrative enforcement scheme established by Congress precludes § 1983 actions under § 47107. *See Northeast Jet Center, Ltd. v. Lehigh–Northampton Airport Auth.*, 767 F.Supp. 672, 685 (E.D.Pa.1991); *Hillman Flying Service, Inc. v. City of Roanoke*, 652 F.Supp. 1142, 1144 (W.D.Va.1987). *See also Montauk–Caribbean Airways, Inc. v. Hope*, 784 F.2d 91, 98 (2nd Cir.1986) (holding that the existence of an administrative enforcement scheme precluded a § 1983 claim based on the FAA). I do not believe these cases are persuasive, however, because they either predate or ignore important Supreme Court precedent on the subject.

One such precedent is *Golden State Transit Corporation v. City of Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). There the Court stated that

> [t]he availability of administrative mechanisms to protect the plaintiff's interests is not necessarily sufficient to demonstrate that Congress intended to foreclose a § 1983 remedy.... Rather, the statutory framework must be such that allowing a plaintiff to bring a § 1983 action would be inconsistent with Congress' carefully tailored scheme.

*Id.* at 106–07, 110 S.Ct. 444 (internal citations and quotation marks omitted). The burden of proving this is on the defendant, and a court should not lightly conclude that Congress intended to preclude a § 1983 remedy. *Id.* at 107, 110 S.Ct. 444. The Supreme Court has suggested that

such a finding should not be made in a conclusory manner:

> We disagree with the Court of Appeals' rather summary conclusion that the administrative scheme of enforcement foreclosed private enforcement. The Court of Appeals merely relied on one of its prior cases which had referred to HUD's authority to enforce the annual contributions contracts.... HUD undoubtedly has considerable authority to oversee the operation of the PHA's [public housing authorities]. We are unconvinced, however, that respondent has overcome its burden of showing that the remedial devices provided in [the Housing Act] are sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983.

*Wright v. City of Roanoke Redev't and Housing Auth.*, 479 U.S. 418, 424, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). *See also Freestone*, 520 U.S. at 341, 117 S.Ct. 1353 (the administrative scheme must be incompatible with individual enforcement under § 1983).

The authorities relied upon by the defendant are inconsistent with these cases. *See, e.g., Northeast Jet Center*, 767 F.Supp. 672, 685 (stating the conclusion that the AAIA "create[s] its own comprehensive enforcement scheme" without analysis and without considering whether a § 1983 action would be inconsistent with that scheme); *Montauk–Caribbean Airways*, 784 F.2d at 98 (reaching a similar one-sentence conclusion with respect to the FAA); *Hillman Flying Service*, 652 F.Supp. at 1144 (dismissing claim under the AAIA based upon the existence of an administrative enforcement scheme without considering whether the scheme was incompatible with private enforcement under § 1983). I cannot rely upon these cases because it is unclear whether they would have reached the same result had they used the analysis set forth by the Supreme Court. Apart from citing these cases, the county does not analyze the issue of

whether Congress foreclosed enforcement via § 1983 of the provisions at issue in this case. Therefore, I conclude that the county has not met its burden of showing that Congress foreclosed the plaintiff's § 1983 claim.

The remaining cases cited by the county are decided on grounds that are either irrelevant or incorrect under the analytical framework set forth in *Freestone.* In *Four T's, Inc. v. Little Rock Municipal Airport Commission,* 108 F.3d 909, (8th Cir.1997), for example, the court dismissed the plaintiff's § 1983 claim based on the AAIA for two reasons. The first—that § 47107 was not intended to benefit "nonaeronautical parties" such as the plaintiff rental car company (*id.* at 915–16)—is clearly inapplicable here.

The court's second reason was the absence of an explicit or implicit private cause of action under the AAIA itself (apart from a § 1983 action). *Id.* This clearly was not a proper reason for dismissing a § 1983 action under the Supreme Court cases discussed above. The court's confusing reasoning is explained by an unusual mistake in the opinion: in extracting the relevant legal rule from a prior decision, the court omitted the crucial word "not". Quoting *Howe v. Ellenbecker,* 8 F.3d 1258 (8th Cir.1993), the court in *Four T's* stated:

> To be enforceable under § 1983 .... the statute itself must provide 'a comprehensive remedial scheme which leaves no room for additional private remedies.' *Howe,* 8 F.3d at 1263 (citation omitted).

108 F.3d at 916. The court in *Howe* actually said that for a statute to be enforceable under § 1983, "we must conclude that the statute itself does *not* provide a comprehensive remedial scheme which leaves no room for additional private remedies". 8 F.3d at 1263 (emphasis added, internal quotation marks omitted) (applying *Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) and *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992)).

By omitting the word "not", the court in *Four T's* gave the relevant rule the opposite of its correct meaning. This was not a mere typographical error; the court actually applied the misstated rule. This explains why the court treated a fact that was favorable or neutral to the plaintiff's § 1983 claim—*i.e.* the absence of a private cause of action under the provisions of the AAIA itself—as a basis for dismissal. Because the court's mistake caused it to reach a conclusion that is plainly inconsistent with *Howe, Wilder, Artist M.* and *Freestone,* I conclude that the *Four T's* decision has no precedential value in the present case.

Two cases cited by the defendant hold that the AAIA is not the kind of statute that creates private rights that can be enforced pursuant to § 1983. *See Northeast Jet Center, Ltd. v. Lehigh–Northampton Airport Auth.,* 767 F.Supp. 672, 685–86 (E.D.Pa.1991); *Rocky Mountain Airways, Inc. v. Pitkin Cty.,* 674 F.Supp. 312, 318 (D.Colo.1987). In *Rocky Mountain Airways,* the court held that statutory provisions such as § 2210, which condition the receipt of federal funds upon a state's providing specific written assurances, do not create private rights enforceable under § 1983. *Id.* The court acknowledged, however, that the question had not been decided. *Id.*

Since then, both the Supreme Court and the court of appeals for the seventh circuit have permitted plaintiffs to bring § 1983 actions based upon state assurances made as a condition of receiving federal funds disbursed under federal statutes. *Wilder,* 496 U.S. at 503, 509, 110 S.Ct. 2510; *Mallett v. Wisconsin Div'n of Vocational Rehabilitation,* 130 F.3d 1245, 1251, 1254 (7th Cir.1997). In light of these decisions, I decline to follow *Rocky Mountain Airways* and *Northeast Jet Center,* which adopts the reasoning of *Rocky Mountain Airways* without independent analysis and without considering *Wilder.*

■ The county has failed to demonstrate, using the test set forth in *Freestone*, that the plaintiff has failed to state a claim under § 1983 for the deprivation of its rights under the AAIA and the FAA Order. The court will therefore deny the defendant's motion to dismiss this claim. In reaching this disposition, I have not considered the defendant's argument that the plaintiff has failed to exhaust its administrative remedies. That argument was raised for the first time in the county's reply brief.

### B. Section 1983 Claim under the Commerce Clause

■ In its fourth claim, which is brought pursuant to § 1983, CAC asserts that the county's fueling restrictions violate the Commerce Clause. The county argues that the claim must be dismissed because the county acts as a market participant when it requires aircraft owners to buy fuel from the FBO. The market participant doctrine differentiates between a State acting in its governmental capacity and a State acting in the more general capacity of a market participant; the Commerce Clause applies only to the former. *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 592, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997).

According to the county, three courts have held that government airports act as market participants when they impose concession fees on lessees who rent space from them at the airport: *Four T's*, 108 F.3d at 913; *Salem Transportation Company of New Jersey, Inc. v. Port Authority of New York and New Jersey*, 611 F.Supp. 254, 258 (S.D.N.Y.1985); and *Transport Limousine of Long Island, Inc. v. Port Authority of New York and New Jersey*, 571 F.Supp. 576, 581 (E.D.N.Y. 1983). The county asserts that it too is a lessor of airport space, and it claims that the fueling restrictions are essentially the same thing as a "surcharge". The county does not elaborate on the latter claim, which I find unpersuasive. I believe that requiring aircraft owners to buy fuel from a designated vendor is quite different from imposing a surcharge.

The county does not merely collect fees from renters or licensees in exchange for space; it imposes a restriction that benefits a third party in a market in which it does not directly participate—the market for aircraft fuel. In this respect, this case is similar to *South–Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984), in which a plurality of the court held that the State of Alaska could not require purchasers of its timber to use in-state processing companies because the State did not participate in the timber-processing market. *Id.* at 97–99, 104 S.Ct. 2237. As the divided opinions in that case make clear, the question of whether the market-participant exception applies in a case such as this is not an easy one. Because the county's argument and the cases it relies upon shed no light on the issue, I will deny its motion to dismiss the plaintiff's fourth claim.

### ORDER

Therefore, IT IS ORDERED that the defendant's motion to dismiss be and hereby is denied, with costs.