**RECTRIX AERODOME CENTERS, INC.**

v.

**BARNSTABLE MUNICIPAL AIRPORT COMMISSION,** et al.

Civil Action No. 06–11246–RGS.

United States District Court, D. Massachusetts.

Feb. 15, 2008.

202

Melissa C. Allison, Kevin D. Batt, William L. Lahey, Scott P. Lewis, Anderson & Kreiger LLP, Cambridge, MA, for Defendants.

Christian T. Becker, Daniel J. Fetterman, Kara H. Headley, Marc E. Kasowitz, Kasowitz, Benson, Torres & Friedman LLP, New York, NY, Anne Robbins, Steven L. Schreckinger, Lynch, Brewer, Hoffman & Fink, LLP, Boston, MA, for Plaintiffs.

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

STEARNS, District Judge.

On July 20, 2006, plaintiff Rectrix Aerodome Centers, Inc. (Rectrix), filed a thirteen-count Complaint against the Barnstable Municipal Airport Commission (BMAC or Airport), and five of its Commissioners.[1] On September 18, 2006, defendants filed a motion to stay the proceedings, asserting that the Federal Aviation Administration (FAA) had primary jurisdiction over plaintiff's principal claims. The court denied the motion to stay, holding that any referral to the FAA would be premature. On August 27, 2007, defendants filed a motion to dismiss Counts IV and V, which allege anticompetitive conduct in violation of section 2 of the Sherman Act (count IV), and the Massachusetts Antitrust Act, Mass. Gen. Laws ch. 93, § 4 (Count V).[2] Defendants claim that they are immune from antitrust liability under the state action and implied immunity doctrines. The court heard oral argument on February 11, 2008.

### BACKGROUND

The Airport, which opened in 1928, is the third busiest in the Commonwealth of Massachusetts. The essence of Rectrix's antitrust claims is that defendants are exploiting their authority over Airport operations to monopolize the sale of jet fuel. According to Rectrix, defendants' conduct not only violates federal and state antitrust laws, but also the BMAC's own rules and regulations. Rectrix further contends that the Airport illegally funnels revenues from jet fuel sales to the Barnstable Town treasury in violation of FAA regulations.

The material facts, viewed in the light most favorable to Rectrix as the nonmoving party, are as follows. In 2002, Rectrix entered into a long-term lease with the BMAC to build and operate a private jet hangar at the Airport. The lease permitted Rectrix to apply to become a fixed-base operator (FBO) as it expanded its

1. The named Commissioners are Michael Denning, Bruce Gilmore, Larry Wheatley, Quincy Mosby, and Francisco Sanchez. (Sanchez is not named as a defendant in Counts IV and V).

2. The Complaint additionally alleges violations of the federal anti-racketeering statute (RICO), 18 U.S.C. § 1962, *et seq.;* denial of due process and equal protection in violation of the Federal Civil Rights Act, 42 U.S.C. § 1983; retaliation for the exercise of free speech; civil conspiracy; two counts of tortious interference with contractual and prospective business relations; two counts of breach of the covenant of good faith and fair dealing; and a demand for specific performance of a Memorandum of Understanding.

business.[3] The Airport is governed by longstanding rules and regulations (Minimum Standards), which specifically authorize an FBO to offer a fueling service and to sell jet fuel. Rectrix contends that defendants intentionally concealed the existence of the Minimum Standards, and promulgated instead a set of "Self–Service Standards," in which defendants reserved for themselves the exclusive right to sell jet fuel at the Airport. Under the terms of the Self–Service Standards, which defendants represented as binding, FBOs are not permitted to sell jet fuel. Rectrix argues that the prohibition forces it to purchase jet fuel for its aircraft from the BMAC at a higher price than it would pay in a truly competitive market.

## DISCUSSION

### 1. State Action Immunity

 In *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court held that the Sherman Act did not apply to anticompetitive restraints imposed by States "as an act of government." *Id.* at 352, 63 S.Ct. 307. Because municipalities are not sovereign entities, they do not automatically qualify for the exemption. *Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 412–413, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978) (plurality opinion). *See also Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 664, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To be entitled to the exemption, a municipal agency must show that it acted "pursuant to state policy to displace competition with regulation or monopoly public service." *Lafayette,* 435 U.S. at 413, 98 S.Ct. 1123. The state policy must be "clearly articulated and affirmatively expressed." *Id.* at

410, 98 S.Ct. 1123. This standard, however, does not require a "state legislature to have stated explicitly that it expected [defendants] to engage in conduct that would have anticompetitive effects." *Town of Hallie v. Eau Claire,* 471 U.S. 34, 42, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). The State need only delegate to the municipality "the express authority that foreseeably will result in anticompetitive effects." *Id.* at 43, 105 S.Ct. 1713. This expansive view of the delegation power recognizes that "[n]o legislature can be expected to catalog all of the anticipated effects of [a statute]." *Id.* Where immunity attaches, it shields not only the municipality as a body corporate and politic, but also municipal officials who are responsible for implementation of the anticompetitive policy. *See Fisichelli v. Town of Methuen,* 956 F.2d 12, 15–16 (1st Cir.1992).

### A. Clearly Articulated Policy

 To determine whether state action immunity applies, the court must first consider whether the Airport's enabling legislation sets forth a clearly articulated policy of displacing competition. The statutory authority to operate a municipal airport in Massachusetts is provided by Mass. Gen. Laws ch. 90, §§ 51D–51N. The statute authorizes an airport commission to "adopt rules and regulations for the use of municipal airports" that comply with the rules and regulations of the Massachusetts Aeronautics Commission and federal aviation law. *Id.* § 51J. These include the ability to

> determine the charges or rentals for the use of any properties, facilities, installations, landing fees, concessions, uses and services and [to] determine the terms and conditions under which contracts may be executed by the commission on storage.

---

**3.** An FBO is a service center at an airport that provides services such as fuel, oil, and hangar

behalf of such city or town.... In all such contracts as may be executed for the foregoing privileges or licenses or any of them the public shall not be deprived of its rightful, legal and uniform use of such properties, facilities, and installations.

*Id.* § 51H. A municipal airport commission is further authorized to enter into leases of airport property for periods of up to twenty years

under such terms and conditions as it may prescribe, for hangars, shops, storage, industrial purposes, offices and other space rental, and for concessions, and may lease any other areas at such an airport for any purpose.

*Id.* § 51F.

To support its argument that no clearly articulated state policy authorizes the BMAC's conduct, Rectrix relies on *Scott Aviation, Inc. v. DuPage Airport Auth.,* 393 F.Supp.2d 638 (N.D.Ill.2005), where plaintiff alleged, as in this case, that an airport's monopoly over the sale of aviation fuel violated the Sherman Act. The *Scott* court rejected defendant's claim of state action immunity because "there [was] no clearly articulated policy by a state entity authorizing [the airport] to engage in the alleged misconduct...." *Id.* at 647. Rectrix argues that the statutes at issue in *Scott* were "very similar" to the Massachusetts enabling statute. However, the *Scott* decision does not cite to, or even paraphrase, the relevant Illinois statutes. (Nor has Rectrix provided the court with a copy). Defendants argue that *Scott* is an aberration. They note that the same court issued a contrary decision nearly twenty years earlier in *Wellwoods Dev. Co. v. City of Aurora,* 631 F.Supp. 221 (N.D.Ill.1986), where a City's claim to an unfettered right to "grant concessions or privileges" to airport operators and to "regulate the use of" the airport, was held to fall within state action immunity. *Id.* at 224, 225.

Plaintiff additionally relies on *Cedarhurst Air Charter, Inc. v. Waukesha County,* 110 F.Supp.2d 891 (E.D.Wis.2000). In that case, the plaintiff airline sued the County for conspiring with a FBO to give the FBO an exclusive right to sell jet fuel at the airport. The FBO in question managed and operated the airport under a contract with the County. *See id.* at 892. The court ruled that there was no clearly articulated Wisconsin state policy authorizing anticompetitive conduct by an airport commission. *Id.* at 893. *Cedarhurst,* however, is distinguishable as there is no allegation in this case that the BMAC conspired with a private party to Rectrix's detriment.

More on point is the decision in *Interface Group, Inc. v. Massachusetts Port Auth.,* 816 F.2d 9 (1st Cir.1987). In that case, a charter airline brought an antitrust action against Massport for requiring the exclusive use of terminal and ground services provided by two existing FBOs at Logan Airport. The First Circuit ruled that Massport was immune from antitrust liability because of the state action doctrine. *See id.* at 12. Citing to Massport's enabling statute, Mass. Gen. Laws ch. 91, §§ 1–14, the Court noted that the Legislature had authorized Massport to "fix the terms, conditions, rents and rates or charges for [use of the airport] ...," and to "establish rules and regulations for the use of [Logan]." *Id.* at 13. The Court reasoned that "[s]etting policies that govern which airlines are to use which terminals, where and how they are to be serviced, and whether or when they can taxi from one terminal to another, lies close to the heart of Massport's basic purpose. Thus, the state has *clearly* indicated that Massport may engage in the activities here in question." *Id.* (emphasis in original).

The enabling language in *Interface* is virtually indistinguishable from the statu-

tory language at issue in this case. Like Massport, the BMAC is permitted to "adopt rules and regulations for the use of [the Airport]." Mass. Gen. Laws ch. 90, § 51J. Like Massport, the BMAC is authorized to "determine charges or rentals for the use of any properties, facilities, installations, landing fees, concessions, uses and services," and to "determine the terms and conditions under which contracts may be executed by the commission." *Id.* § 51H. And as in *Interface*, the rules developed by the BMAC for the fueling of jet aircraft "lie[ ] close to the heart" of the Airport's basic purpose. 816 F.2d at 13.[4]

*Interface* is not an isolated case. Courts in other circuits have also approved the application of the state action immunity doctrine in cases where the authority granted by an enabling statute was stated in the most general of terms. *See, e.g., Hillman Flying Serv. Inc. v. Roanoke,* 652 F.Supp. 1142, 1146 (W.D.Va.1987) (statute authorized airport commissions to "impose regulations to make the most efficient and cost effective air service available to the public"); *Four T's, Inc. v. Little Rock Mun. Airport Comm'n,* 108 F.3d 909, 914 (8th Cir.1997) (statute gave commission the "full and complete authority" to manage the airport); *Indep. Taxicab Drivers' Employees v. Greater Houston Transp. Co.,* 760 F.2d 607, 610 (5th Cir.1985) (a "[s]tatute's broad phrasing is a strong indication of the state's desire to abdicate in favor of municipal prescience with regard to airport management.").

 To the extent that Rectrix argues that state action immunity does not apply because defendants are illegally diverting Airport funds for Town use, the argument fails. Motive may well figure in other of plaintiff's claims, but it is irrelevant to the immunity analysis. "[W]here the action complained of ... was that of the State itself, the action is exempt from antitrust liability regardless of the State's motives in taking the action." *Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 377–378, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991), citing *Hoover v. Ronwin,* 466 U.S. 558, 579–580, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984). Accordingly, the court finds that the BMAC was acting according to a clearly articulated state policy.

**4.** The court is aware that in two pre-*Interface* cases, the district court declined to apply state action immunity. In the first of the cases, Judge Wolf held that a plaintiff airline could maintain a Sherman Act claim against the county airport in Martha's Vineyard for its refusal to grant a commercial carrier landing rights. *See New York Airlines, Inc. v. Dukes County,* 623 F.Supp. 1435 (D.Mass.1985). In his analysis of defendants' assertion that they were shielded from antitrust claims by state action immunity, Judge Wolf considered Mass. Gen. Laws ch. 90, §§ 51E–52, and ruled that "there is no indication that anticompetitive conduct is necessary to the statutory scheme." *Id.* at 1451–1452. Judge Wolf employed a two-part test: first, there must be a clearly articulated state policy, and second, the policy must be actively supervised by the State. *Id.* at 1451, citing *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 105, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). It must be noted, however, that the second prong of the test relied upon by Judge Wolf was rejected by the Supreme Court in *Hallie,* 471 U.S. at 47, 105 S.Ct. 1713.

In the second (unpublished) opinion, *Trustees of A.J. Bremen Realty Trust v. City of Boston,* 1985 WL 6083 (D.Mass. March 12, 1985), plaintiffs alleged that they were denied a parking lot license as the result of an antitrust conspiracy involving the City, Massport, and the Commissioner of Traffic and Parking. *Id.* at *1. Judge Mazzone denied defendant's motion to dismiss, ruling that while "Massport may have authority to conduct studies and to operate a remote parking facility, and the City of Boston may have the authority to study or grant licenses to operate parking lots, this power does not amount to clear policy to displace competition in parking lot operations." *Id.* at *2 (internal citations omitted).

### B. *The Market Participant Exception*

■ A finding of a clearly articulated policy does not necessarily end the inquiry. There is additionally the question of whether the BMAC falls into a potential market participant exception to the state action immunity doctrine. In *Parker*, the Court stated in dicta that

> we have [before us] no question of the state or its municipality becoming *a participant in a private agreement or combination by others* for restraint of trade, *cf. Union Pacific R. Co. v. United States*, 313 U.S. 450, 61 S.Ct. 1064, 85 L.Ed. 1453.... [T]he state in adopting and enforcing the prorate program made no contract or agreement and entered into no conspiracy in restraint of trade or to establish monopoly but, as sovereign, imposed the restraint as an act of government which the Sherman Act did not undertake to prohibit.

317 U.S. at 351–352, 63 S.Ct. 307 (emphasis added).[5] The Court later reiterated that state action immunity "does not necessarily obtain where the State acts not in a regulatory capacity but as a commercial participant in a given market." *Omni Outdoor*, 499 U.S. at 374–375, 111 S.Ct. 1344.[6]

Although Rectrix raises the market participant exception, it does not cite to any case (nor can the court find one) that has applied the exception to reject a claim of state action immunity. In a factually similar case, *Allright Colorado, Inc. v. City of Denver*, 937 F.2d 1502 (10th Cir.1991), the Tenth Circuit summarily rejected plaintiffs' argument that the City of Denver, as the operator of Stapleton Airport, was a market participant and a "competitor," and therefore unable to claim antitrust immunity. *Id.* at 1510. In *Allright*, shuttle bus operators accused the City of violating the antitrust laws by granting its SMART buses the exclusive use of the most favorable passenger pick-up locations and routes at the airport. *Id.* at 1504. The court, without elaboration, stated that "the City's additional status as a possible competitor, or its possible engagement in a proprietary activity, is not determinative." *Id.* at 1510. Given the clear policy articulated in the BMAC's enabling legislation, and the absence of any precedent supporting an application of a market participant exception to a defendant's unilateral actions, the doctrine of state action immunity applies and Counts IV and V must be dismissed.[7]

---

5. In *Union Pacific*, the City of Kansas City owned and operated a wholesale produce market at a railroad terminal owned by the railroad. The City granted rebates to sellers who agreed to move into the new terminal. 313 U.S. at 465–466, 61 S.Ct. 1064. Plaintiffs argued that the rebates were in violation of the Elkins Act because the motive was to divert produce traffic from other railroads to Union Pacific. *Id.* at 460–461, 61 S.Ct. 1064.

6. In *Omni Outdoor*, the Court rejected a challenge to certain zoning statutes, finding that the foreseeable result test was amply met, as the purpose of the zoning regulations was to "displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition, particularly on the part of new entrants." 499 U.S. at 373, 111 S.Ct. 1344. The Court additional-

ly found that state action immunity applied despite proof of a conspiracy between city officials and a private actor because the Sherman Act "condemns trade restraints, not political activity." *Id.* at 379, 111 S.Ct. 1344 (citation omitted).

7. Defendants additionally argue that they are entitled to implied immunity because Rectrix's Sherman Act claim presents a potentially serious conflict with rules and regulations established and enforced by the FAA. The Supreme Court has set out four factors to be used in determining whether a "clear repugnancy" between a Sherman Act claim and an agency's regulations preclude the application of the antitrust laws. A court must evaluate: (1) whether the possible conflict affects practices that lie squarely within an area of activity that aviation law seeks to regulate; (2) the

### 2. *State Antitrust Claim*

Because defendants are shielded from the Sherman Act claims by state action immunity, Rectrix's parallel state-law claim also fails. *See Interface,* 816 F.2d at 17 (affirming district court's dismissal of claims under the Massachusetts Antitrust Act in light of defendant's immunity under the state action doctrine). *See also* Mass. Gen. Laws ch. 93, § 7 ("No provision of this Act shall apply to (a) [a]ny activities which are exempt from any of the federal antitrust laws or the Federal Trade Commission Act other than by reason of the absence of a sufficient involvement of or impact upon interstate commerce.").

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Counts IV and V of the Complaint is *ALLOWED.*

SO ORDERED.

existence of regulatory authority under aviation law to supervise the activities in question; (3) evidence that the FAA exercises that authority; and (4) a resulting risk that aviation law and antitrust law, if both applicable, would produce conflicting guidance, requirements, duties, privileges, or standards of conduct. *Credit Suisse Securities (USA) LLC v. Billing,* —— U.S. ——, 127 S.Ct. 2383, 2392, 168 L.Ed.2d 145 (2007). There is no need for the court to decide whether implied immunity applies, given its ruling on defendants' claim of state action immunity.