In re JET 1 CENTER, INC., Debtor.

Jet 1 Center, Inc., a Florida Corporation, Plaintiff/Counter-defendant,

v.

City of Naples Airport Authority, Defendant/Counter-plaintiff And Third–Party Plaintiff,

v.

Jet 1 Center, Inc., et al., Counter-defendant and Third–Party Defendants.

Bankruptcy No. 9:03–BK–26514–ALP. Adversary No. 04–110.

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

Feb. 15, 2005.

Lori V. Vaughan, Foley & Lardner, Tampa, FL, for Debtor.

T. Patrick Tinker, Office of the U.S. Trustee, Tampa, FL, for Trustee.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS WITH RESPECT TO SECOND AMENDED COMPLAINT

(Doc. No. 66)

ALEXANDER PASKAY, Bankruptcy Judge.

THE MATTER under consideration in this yet to be confirmed Chapter 11 case of Jet 1 Center, Inc. is a Motion for Summary Judgment and Judgment on the Pleadings with Respect to Second Amended Complaint (Doc. No. 66), filed by the City of Naples Airport Authority, Theodore D. Soliday and Commissioner Eric West, the Defendants named in the above-captioned Adversary Proceeding. The Motion for Summary Judgment is filed pursuant to Federal Rules of Bankruptcy Procedure, Rule 7056 and the Judgment on the Pleadings is filed pursuant to F.R.B.P. 7012(c), and is directed to each and every Count of the Second Amended Complaint filed by the Debtor.

In order to place the issues raised by the Motion in an understandable posture, a brief recap of the pre-filing litigations between the parties should be helpful.

Prior to the initiation of this Chapter 11 case, Jet 1 Center, Inc. (the "Debtor") and the City of Naples Airport Authority (the "Authority") were involved in two separate state court actions. The first case was filed in August of 2000 in the Twentieth Judicial Circuit Court in and for Collier County, Florida, (the "Circuit Court") and was filed by the Debtor against the Authority. In this suit, the Debtor sought declaratory relief regarding its rights under certain leases it had with the Authority. This litigation has been referred to as the "Eviction Action," most likely because the Authority counterclaimed and sought to evict the Debtor and its subtenants from the airport operated by the Authority.

On December 9, 2002, the Authority initiated the second action in the Circuit Court against the Debtor and sought an injunction against the Debtor to conduct any fueling operations at the airport. This action has been referred to as the "Injunction Action."

In response to the suit for injunction, the Debtor filed an Answer and Affirmative Defenses. Later, the Debtor filed Amended Affirmative Defenses, including, waiver, estoppel, and illegal regulations based on the retaliation of Bill of Attainder.

On the eve of the trial of the Injunction Action, the Debtor moved to file Second Amended Affirmative Defenses and a new Counterclaim. The Debtor also filed a Motion to Continue the trial, urging the Circuit Court to allow the Debtor to serve additional defenses, including, unconstitutional illegal impairment of contract rights and violations of State Antitrust Statutes. The Circuit Court denied the Debtor's Motion to Continue the trial and denied the Debtor's Motion to add additional affirmative defenses and the counterclaim. The Circuit Court concluded that the Debtor had waited too long to assert these known defenses for the first time and was barred from raising them that late in the litigation. (Tr., Vol.1, p. 30–32).[1]

After a three-day bench trial, the Circuit Court orally announced its decision in favor of the Authority in the Injunction Action. In its ruling, the Circuit Court held the following:

1. The Authority reserved to itself the exclusive right to be the purveyor of fuel and the Authority never waived that right (Tr., Vol. III, p. 568).

2. The action of the Authority in creating the November 8, 2002, aviation fuel regulation were not discriminatory or retaliatory to the Debtor. The November 8, 2002 aviation fuel regulations applied to all Airport users (Tr., Vol. III, p. 568).

3. The Authority's action in revoking the Debtor's Fuel Permit was a proper use of governmental police power (Tr., Vol. III, P. 568).

4. The Authority has an obligation to protect its fueling resources to pay for the operation of the airport (Tr., Vol. III, p. 568).

5. That the rules and regulation of the Authority are a proper exercise of its obligation to protect the health, safety and general welfare of the public (Tr., Vol. III. p. 569).

1. *City of Naples Airport Authority v. Jet 1 Center Inc.,* Case No. 02–5010 CA–HDH, Collier County, Florida, Circuit Court. Tr., Vol. I through Vol. III is in reference to the Circuit Court trial transcript of the Injunction Action.

6. That the Debtor materially breached its agreement with the Authority (Tr., Vol. III, p. 569).

7. The Authority has a duty or an obligation to continue to fund itself through the service charges that it reasonably calculates are necessary to keep the Airport in operation. The market is going to control, to a great extent, what the Authority can do, but the control of fuel sales at the Airport is required as the Authority is a governmental agency (Tr., Vol. III, p. 578).

8. That the Debtor's privilege to pump fuel at the Airport was properly terminated by the Authority (Tr., Vol. III, p. 570).

9. The Authority has properly revoked the Debtor's Fuel Permit as the actions of Jet gave the Authority cause to terminate the Fuel Permit based on violations and the Debtor's history of subterfuge, deceit and actual admitted violations (Tr., Vol. III, pp. 580–581).

Before the oral ruling of the Circuit Court could be reduced to writing, the Debtor on December 29, 2003, filed its Petition for Relief under Chapter 11 of the Bankruptcy Code which, by virtue of operation of the automatic stay, prohibited and stayed any further actions, including the entry of a formal written order in the Injunction Action.

The Authority filed an Emergency Motion for Relief from Automatic Stay (Doc. No. 6, General Case No. 9:03–bk–26514–ALP), seeking leave to proceed and complete the Injunction Action already tried, requesting permission for the Circuit Court to enter a formal written final judg-ment in conformity with the oral ruling announced from the bench at the conclusion of the trial. On February 24, 2004, this Court entered its Order Granting Motion for Relief from the Automatic Stay in Favor of the City of Naples Airport Authority, Authorizing the Authority to seek the entry of a judgment based on the findings and conclusions orally announced by the Circuit Court at the conclusion of the three day bench trial. (Doc. No. 67, General Case No. 9:03–bk–26514–ALP).

On February 19, 2004, the Debtor then filed a Notice of Removal of a Civil Suit, thereby, initiating the above-captioned adversary proceeding, which is the removal of the State Eviction Action before this Court. Once the Eviction Action was removed to this Court, the Debtor on March 22, 2004, filed its Motion for Leave to File Second Amended Complaint and to Join Additional Defendants (Doc. No. 4, Adversary Proceeding No. 9:04–ap–00110–ALP)[2].

In due course, this Court heard argument in support of and in opposition to the Motion for Leave to Amend and ultimately entered its Order granting the Motion for Leave to File Second Amended Complaint and to Join Additional Defendants (Doc. No. 27, Adv.Pro.).

The Debtor, in its Second Amended Complaint, asserted ten claims in ten separate Counts. A brief summary of these claims are as follows:

In Count I, the Debtor seeks via declaratory relief pursuant to Title 28 of the United States Code, Section 2201 and the determination of (a) its right to continue to occupy its business premises and to conduct its business pursuant to the terms of its leases with the Authority (Debtor's Ex-

---

**2.** Docket entries in Adversary Proceeding No. 9:04–ap–00110–ALP will be referred to as Adv. Pro.

hibits A, B, C, and D of the Second Amended Complaint); (b) its right to continue to dispense fuel and to otherwise operate pursuant to the fuel permit (Debtor's Exhibit E of Complaint the Second Amended Complaint) (the "Fuel Permit"); (c) its right to continue to participate in the Pre–Purchase Fuel Program implemented on November 10, 1999 (Debtor's Exhibit H of the Second Amended Complaint) (the "Pre–Purchase Fuel Program"); and (d) its right to an award of attorneys' fees.

In Count II, the Debtor also seeks via declaratory relief the determination of its right to participate in the Pre–Purchase Fuel Program and to pay the per gallon price specified in the Letter Agreement dated November 16, 1999 (Debtor's Exhibit H of the Second Amended Complaint).

In Count III, the Debtor seeks injunctive relief and reasonable attorneys fees pursuant to Section 16 of the Clayton Act, Title 15 of the United States Code, Section 26 for Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Specifically, the Debtor seeks an injunction prohibiting the Authority from enforcing the termination of the Fuel Permit predicated on the fact that the Debtor dispenses fuel at prices and to a class of customers other than the prices dictated by the Authority. In addition, the Debtor also seeks an injunction prohibiting the Authority to promulgate and enforce any "Rates and Charges," to the extent that they attempt to control prices and/or eliminate the Debtor as a competitor. According to the Debtor, these actions by the Authority are a per se violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, which is a horizontal price fixing.

In Count IV, the Debtor seeks injunctive relief and attorneys fees pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26 for violation of Section 2 of the Sher-

man Act, 15 U.S.C. § 2, alleging the Authority is monopolizing any part of trade or commerce by terminating the Debtor's fuel permit for the purpose of eliminating competition at the Naples Municipal Airport (the "Airport").

In Count V, the Debtor's claim is based on the Florida Antitrust Act, Section 542.18 of the Florida Statutes. The claim in this Count is based on the same factual allegations set forth in Count III of the Debtor's Second Amended Complaint, whereas, the Debtor seeks injunctive relief and attorneys fees pursuant to Section 542.23 of the Florida Statutes for violation of Section 542.18 of the Florida Statutes.

In Count VI, the Debtor seeks injunctive relief and attorney fees pursuant to Section 542.23 of the Florida Statutes for violations of the Florida Antitrust Act, Florida Statute, Section 542.19. This claim is setting forth the same allegations set forth in Count IV of this Second Amended Complaint.

In Count VII, the Debtor alleges an unconstitutional impairment of its contract rights. The claim sought by the Debtor is pursuant to Article I, Section 10 of the Florida Constitution and Article 1, Section 10 of the United States Constitution. The Debtor seeks injunctive relief prohibiting the Authority from enforcing or passing any regulations which would impair its right under the contract it has with the Authority.

The Debtor's claim in Count VIII is based on the doctrine of *promissory estoppel*. The Debtor claims that it relied upon the agreements it had with the Authority and on the representations by the Authority. The Debtor claims under the changed regulations governing fueling, the Debtor cannot continue to operate the fueling operation at the Airport; the Authority should be estopped from enforcing the

changed regulation; and the Debtor has been injured by the changed regulations.

The claim in Count IX is based on the laws of Title 42 of the United States Code, Section 1983. The Debtor contends that pursuant to the AP–4 Agreement with the United States, the Airport was improved with Federal Funds and the AP–4 Agreement contained several covenants, such as, that the Airport would be operated without grant or exercise of any exclusive right for the use of the airport within the meaning of Section 303 of the Civil Aeronautics Act of 1939.

It is the Debtor's contention that the Authority agreed to comply with all laws, ordinances, rules and regulations pertaining to the operation of the Airport. Furthermore, the Debtor contends that, the Authority, Theodore D. Soliday and Commissioner Eric West under color of statute, failed to comply with the AP–4 Agreement, therefore, depriving the Debtor of the rights and privileges secured to it by the laws of the United States. Thus, the Defendants, the Authority, Theodore D. Soliday and Commissioner Eric West are liable for the resulting damages suffered by the Debtor.

The claim in Count X is also based on the laws of Title 42 of the United States Code, Section 1983, which involves the Debtor's self-fueling rights. It is contended by the Debtor that the Authority received more that $15,000,000 in Federal Grants and that Federal Law provides anyone receiving a grant must file with the Secretary of Transportation written assurances that it will abide by the prohibition of unjust discrimination, in particular, with the provision of Title 49 of the United States Code, Section 47107. The Debtor further contends that the Federal Aviation Act (the "FAAct"), Order 5190.6A, prohibits the refusal "to permit an air carrier, air taxi, or flight school to fuel its own air-

craft." According to the Debtor, despite this prohibition, the Authority, Theodore D. Soliday and Commissioner Eric West have deprived the Debtor of its rights and privileges secured by the laws of the United States. Based on these allegations, the Debtor contends that the Defendants are personally liable for the resulting damages pursuant to 42 U.S.C. § 1983 and also attorneys' fees pursuant to 42 U.S.C. § 1988.

The Motion for Summary Judgment filed by the Authority is based on three separate and distinct theories which are as follows:

(1) Doctrine of Claim Preclusion (*res judicata*) and the Doctrine of Issue Preclusion (*collateral estoppel*), concerning the claims of the Debtor set forth in Counts I, II, VII, VIII, IX and X;

(2) Doctrine of State Action Immunity concerning the claims of the Debtor set forth in Counts III, IV (Sherman Act, Section 1 and 2) and V and VI (Fla. Stat. Section 542.18, 542.19, and 542.23) both based on the Doctrine of State Action Immunity; and

(3) It is the contention of the Authority in addition to the contention that these claims are barred by the doctrine of collateral estoppel that there are no private causes of action based on the alleged violation of a covenant covering a government funded project under 42 U.S.C. § 1983.

Before raising specific points in opposition of the Motion for Summary Judgment filed by the Authority the Debtor contends that it is inappropriate to consider the Motion because the Debtor did not have adequate time to conduct discovery. (citing *In re Bilzerian*, 190 B.R. 964, 966 (Bankr. M.D.Fla.1995)).

The parties have been in litigation since August 2000. Both in the injunction suit

and in the eviction action, the parties conducted extensive discovery. The vast majority of the controlling facts of the issues raised by the Motion for Summary Judgment are a matter of record, undisputed and no discovery could possibly be needed concerning those issues which were raised both in the injunction and the eviction actions. For this reason this Court is satisfied that the Motion for Summary Judgment filed by the Authority is ripe for consideration and is not premature.

In opposition to the Motion for Summary Judgment, the Debtor contends that neither the doctrine of claim preclusion nor the doctrine of issue preclusion applies to any of the claims asserted by the Debtor in its Second Amended Complaint because the Final Judgment of the Circuit Court is pending on appeal therefore, the Final Judgment is not final and finality is an indispensable element for the defense of issue preclusion or collateral estoppel.

■ The doctrine of claim preclusion, or *res judicata*, has been enunciated in the Eleventh Circuit in the case of *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir.1986). In *Durbin* the Court held that there are four required elements for the doctrine of claim preclusion to bar a suit: (1) there must be a final judgment on the merits; (2) the decision must be rendered by a court of competent jurisdiction; (3) the parties, or those in privity, must be identical in both suits; and (4) the same cause of action must be involved in both cases. *Id.*

According to the Debtor, the doctrine of *res judicata* only applies if the judgment under consideration reflects: "... (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties of the action, and (4) identity of the quality in the person for or against whom the claim is made." Citing *U.S. Project Management, Inc., v. Parc Royale*

*East Development, Inc.*, 861 So.2d 74, 76 (Fla. 4th DCA 2003) (citing *Hittel v. Rosenhagen*, 492 So.2d 1086, 1089 (Fla. 4th DCA 1986); *Donahue v. Davis*, 68 So.2d 163, 169 (Fla.1953)).

In addition, in support of its position the Debtor contends that the doctrines cannot apply because the decision of the Circuit Court in the injunction action is currently pending on appeal. Therefore, it is not final. According to the Debtor, finality is an indispensable element to the application of issue preclusion.

In opposition of the Authority's contention that the following claims were never litigated in the Injunction Action: 1) the claims in Counts I, II (Fuel Permit and participation in the Pre–Paid Fuel Purchase Program; 2) Count VII (Unconstitutional Impairment of Contract); 3) Count VIII (Promissory Estoppel); and 4) Counts IX, and X (42 U.S.C. § 1983 Exclusive Rights and Self–Fueling Rights). Therefore, these claims by the Debtor are not governed by the defense of issue preclusion or collateral estoppel.

In light of the fact that the Final Judgment entered by the Circuit Court has been challenged and is currently pending on appeal, the initial inquiry must be addressed to the issue of "finality" of a judgment as it is required by the application of the doctrine of collateral estoppel.

To find a satisfactory answer to this question is not without difficulty. This is so because courts are not in agreement whether or not a final judgment which is on appeal may bar any further litigation of the claim or the issues tried below. On the one hand it could be argued that the finality of judgments is historically recognized, a well established principle, and is essential to the effective administration of justice. Applying this principle, one might contend that it would be a shear waste of

judicial economy and labor to proceed and try issues and claims which had been litigated in lower courts while an appeal is pending. Therefore, if a case is reversed, it is most likely the case may be remanded, in which event the trial court will be required to try the claims and issues again.

Whether or not *res judicata* applies to a final judgment when it is on appeal and has been considered by several courts in various jurisdictions. It is not surprising that there is no general consensus, agreement and there are no controlling answer pronounced by the courts to this troubling question.

In the case of *Deposit Bank v. Frankfort*, 191 U.S. 499, 24 S.Ct. 154, 48 L.Ed. 276 (1903) the Supreme Court considered the issue of *res judicata* and stated:

" 'A right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact, once so determined, must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.' "

191 U.S. at 514, 24 S.Ct. 154 (citing *Southern P.R. Co. v. United States*, 168 U.S. 1, 18 Sup.Ct. Rep. 18, 42 L.Ed. 355).

In the case of *Pharmacia & Upjohn Company v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373 (Fed.Cir.1999) the Court of Appeals for the Federal Circuit considered the issue of whether or not the District Court erred by applying the doctrine of collateral estoppel because Upjohn didn't have a full and fair opportunity to litigate and the effect of the judgment involved in that case was uncertain. The Court of Appeals in *Pharmacia* stated:

"Although the Fourth Circuit has not directly spoken on the issue, a district court opinion from that circuit, affirmed without opinion, suggests that the Fourth Circuit follows '[t]he established rule in the federal courts ... that a final judgment retains all of its res judicata consequences pending decision of the appeal .. [.]' " *Warwick Corp. v. Maryland Dep't of Transp.*, 573 F.Supp. 1011, 1014 (D.Md.1983) (quoting 18 Charles Alan Wright[, Arthur R. Miller, Edward H. Cooper] et al., Federal Practice and Procedure § 4433, at 308 (1981)), aff'd without opinion, 735 F.2d 1359 (4th Cir. 1984). This conclusion is buttressed by the uniformity of the rule in other circuits. In *SSIH Equipment S.A. v. United States International Trade Commission* we stated:

[T]he law is well settled that the pendency of an appeal has no effect on the finality or binding effect of a trial court's holding. *Deposit Bank v. Board of Councilmen of City of Frankfort*, 191 U.S. 499, 24 S.Ct. 154, 48 L.Ed. 276 (1903). That rule is applicable to holdings of patent invalidity as well. *Alamance Industries, Inc. v. Gold Medal Hosiery Co.*, 194 F.Supp. 538, 540, 129 USPQ 219, 220 (S.D.N.Y.1961).

*SSIH Equipment S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 370, 218 USPQ 678, 683 (Fed.Cir. 1983) (additional citations omitted); see also Wright et al., § 4433, at 308 (1981 & Supp.1998) (citing case law from the Supreme Court and from the Second, Fifth, Sixth, Seventh, Ninth, Eleventh, District of Columbia and Federal circuits for the proposition that a final judgment retains its preclusive effect despite the pendency of an appeal). Thus, the court below properly applied collateral estoppel

despite the then possibility of an appeal in MOVA. See *Williams v. Commissioner*, 1 F.3d 502, 504 (7th Cir. 1993) ("[A] judgment final in the trial court may have collateral estoppel effect even though the loser has not exhausted his appellate remedies.").

*Pharmacia*, 170 F.3d at 1381.

■ Based on the foregoing, this Court is satisfied that the fact that the Final Judgment of the Circuit Court entered in the Injunction Action is on appeal has no effect on the finality or binding effect of a trial court's holding and a final judgment retains all of its *res judicata* consequences notwithstanding the pendency of an appeal.

Having concluded that, it is appropriate for this Court to consider the applicability, *vel non,* of the doctrine of claim preclusion and issue preclusion to the claims under consideration, it is important to determine exactly what the Circuit did and did not decide in the Injunction Action.

## DECLARATORY JUDGMENT IN RE JET'S RIGHT TO FUEL AND OCCUPY THE PREMISES (Count I) DECLARATORY JUDGMENT IN RE JET'S RIGHT TO PARTICIPATE IN A PRE–PURCHASE FUEL PROGRAM(Count II)

■ The Authority contends that the Debtor is barred by the doctrine of *res judicata* or *collateral estoppel* to litigate its right to fuel planes under its Fuel Permit at the Airport (Count I) and its right to participate in the Pre–Purchase Fuel Program (Count II). However, it should be emphasized that in Count I the Debtor also seeks a declaration as to its right to continue to occupy its business premises and conduct its business pursuant to the terms of the leases.

Considering the applicability of the doctrines of *res judicata* and *collateral estop-*pel relied on by the Authority in support of its Motion for Summary Judgment, it should be noted, that this contention is solely based on the Final Judgment entered by the Circuit Court on March 19, 2004. Thus, it is important to make clear at the outset, which of the two lawsuits were actually tried and what were the specific findings and conclusions of the Circuit Court in that precise lawsuit.

It cannot be gainsaid that the only lawsuit which was tried was the suit referred to as the Injunction Action which was commenced by the Authority against the Debtor. This lawsuit had two well-defined discrete issues:

(1) the legality and validity of the termination by the Authority of the Debtor's Fuel Permit; and

(2) the denial by the Authority of the Debtor's right to participate in the Pre–Purchase Fuel Program by paying the per gallon fuel price at the rate specified in the Letter Agreement.

Therefore, the Injunction Action did not involve: (1) the Debtor's right, if any, under its Lease Agreement with the Authority (Count I); (2) whether or not the Authority's action to terminate the Debtor's Lease and its right of occupancy at the Airport was valid and enforceable (Count I); (3) whether the action of the Authority violated Sections 1 and 2 of the Sherman Act or the corresponding Florida Statutes, Sections 542.18 and 542.19 (Counts III, IV, V and VI). In addition, the Injunction Action did not involve the issue of whether the action of the Authority was an unconstitutional impairment of the Debtor's contract right (Count VII), or whether or not the doctrine of promissory estoppel is applicable to the facts of this case (Count VIII), whether 42 U.S.C. § 1983 (Exclusive Rights of all Defendants), confers an enforceable private cause of action based

on an alleged violation of a covenant of a federally funded project (Count IX and X).

The Circuit Court found as the basis for its Judgment in favor of the Authority: (1) the Authority reserved to itself the exclusive right to be the sole purveyor of fuel at the airport and the Authority never waived that right; (2) the actions of the Authority in November 2002 were not discriminatory or retaliatory particularly vis-à-vis the Debtor; the action of the Authority was a proper use of governmental police power; (3) the Authority had the duty and the obligation to protect its funding resources in order to meet the operating expenses of the airport; the operation of the Airport served the health and general welfare of its citizens; (4) the Debtor was guilty of material breaches of the contract with the Authority; (5) that there was no evidence before the Court which would support the finding that the Authority ever approved, authorized, sanctioned or condoned any violation by the Debtor of any terms of its Fuel Permit; and (6) that there was no evidence to support the conclusion that there was a novation of the contract based on parol evidence.

The Circuit Court expressly declined to consider and rule on the validity *vel non* of the Debtor's lease with the Authority; the Debtor's right to occupy the premises; the validity *vel non* of the sub-leases; and whether the Authority complied with the six-month requirement fuel farm allocation. Any defenses of facts relevant to these issues may be raised in the "Eviction Action." Additionally, the Circuit Court declined to rule on the Debtor's right to self-fueling.

Thus, the Authority's reliance on the doctrines of claim or issue preclusion is supported by the findings, and the Final Judgment of the Circuit Court is limited to the Debtor's right to continue to use its Fuel Permit (Count I) and the Debtor's right to participate in the Pre–Purchase Fuel Program (Count II). Consideration of these issues is only proper if this Court is willing to infer that the Final Judgment also did by inference rule on some other claims asserted by the Debtor in its Second Amended Complaint. In order to find a satisfactory answer to this proposition it is necessary to review the Debtor's Answer to the Amended Counterclaim of the Authority filed in the Injunction Action.

The Answers of the Debtor set forth some admissions and some general denials. The Debtor coupled its Answers with the following affirmative defenses:

(1) The retention of the right of exclusivity by the Authority was invalid;

(2) The "Rates and Charges," are not part of the contractual relationship, therefore, the Court should not consider them;

(3) The Authority claim for relief is barred by the doctrine of Equitable Estoppel;

(4) The Authority waived the basis of all of its claims; and

(5) The Authority's action was in retaliation of the suit filed by the Debtor and it was an abuse of the system.

The issues as formulated by the pleadings, and as outlined above, were set for a bench trial. As stated above, on the eve of the scheduled trial date the Debtor filed a Motion and sought leave to file an Amended Answer to the Authorities Counterclaim in order to assert for the first time the following additional affirmative defenses.

(1) Violation of Sections 1 and 2 of the Sherman Antitrust Act, Title 15 of the United States Code, Sections 1 and 2;

(2) Florida Antitrust Act, Florida Statutes, Sections 542. 18 and 542.19;

(3) Unconstitutional impairment of the Debtor's contract right; and

(4) Promissory Estoppel.

As noted earlier, the Circuit Court heard arguments on the Motion and denied the same, based on the facts that the case was fully prepped and ready to go to trial, the issues were submitted to arbitration; a decision was rendered by the arbitrator; and the Motion was too late. It is important to note at this point that the Circuit Court made it clear that the denial of the Motion was limited and applied only to the Injunction Action and did not apply to the Eviction Action.

In sum, it is clear that the Circuit Court's denial of the Debtor's Motion to assert additional defenses applies only to the Injunction Action and did not apply to the Eviction Action. It is also clear that the Final Judgment entered in the Injunction Action applied only to the claims of the Debtor to continue its fueling operation at the Airport (Count I) and the Debtor's right to participate in a Pre–Paid Fuel Purchase Program (Count II).

It should be evident from the foregoing, that in addition to the claims of the Debtor set forth in Counts I and II, the Circuit Court also considered the Debtor's claim based on the affirmative defense of promissory estoppel. Therefore, the Authority is entitled to a partial summary judgment on the claims set forth in Counts I (limited to the Fuel Permit) and II (limited to the Pre–Paid Fuel Purchase Program), but denied as to the determination of the Debtor's right of occupancy at the Airport. Claims preclusion and issue preclusion have no application for the claims set forth in Counts V, VI, VII, VIII, IX and X.

## SHERMAN ANTITRUST ACT 15 U.S.C. §§ 1 AND 2 (Counts III and IV)

The claims in Counts III and IV are based on the Debtor's allegations that the termination of the Debtor's Fuel Permit (Count IV) and preventing the Debtor to participate in the Pre–Purchase Fuel Program (Count IV) violated Sections 1 and 2 of the Sherman Antitrust Act.

The Authority in its Motion for Summary Judgment contends that the Authority is immune and cannot be held liable for the violations of the Sherman Antitrust Act. According to the Authority, the State Action Immunity is not merely a defense, but operates as an absolute bar of any claim based on the violation of the Sherman Antitrust Act as a matter of law.

The claim of State Action Immunity has been considered by several courts over the years and there is a plethora of respectable cases which recognized this doctrine. The seminal case which dealt with this subject is the often cited case of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

In *Parker*, the Supreme Court noted that "[t]he Sherman Act makes no mention of a state as such, and gives no hint that it was intended to restrain state action or an official action directed by a state." *Id.* at 351, 63 S.Ct. 307. The Court further noted that the Sherman Act was designed to prevent "business combinations," and "to restrain competition and attempts to monopolize by individuals and corporations." *Id.* (citing *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 60 S.Ct. 982, 992, 84 L.Ed. 1311, 128 A.L.R. 1044, and note 15 (1940); *United States v. Addyston Pipe & Steel Co.*, 6 Cir., 85 F. 271. 85 F. 271, 46 L.R.A. 122, affirmed 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899); *Standard Oil Co. v. United States*, 221 U.S. 1, 54–58, 31 S.Ct. 502, 513, 515, 55 L.Ed. 619, 34 L.R.A.N.S. 834, Am.Ann.Cas. 1912D,734 (1911)). The Court concluded that Sherman Act was not designed "to restrain a state or its officers or agents from activities directed by the legislature." *Parker*, 317 U.S. at 350–351, 63 S.Ct. 307.

The Supreme Court in the case of *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), construed *Parker* to the effect that before the state action immunity bars an antitrust violation the state agency or a municipality must act pursuant to a clearly expressed state policy. *Id.* (citing *Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978)). However, in order to meet the "clear articulation" test, "it is not necessary that legislature expressly state in the statute or in its legislative history that legislature intended the delegated action to have anticompetitive effects...." *Hallie,* 471 U.S. at 34, 105 S.Ct. 1713. The contention that unless there is an "express articulation," the state immunity will not apply, was expressly rejected by the Supreme Court who noted that, to accept this proposition one must accept an unrealistic view of how legislatures work and how statutes are written. The Court held that no legislature can be expected to catalog all of the anticipated effects of a statute of this kind.

The Debtor concedes that the Authority is a political subdivision of the State of Florida. However, the Debtor contends that the Authority is not entitled to State Action Immunity relying on the case of *Cedarhurst Air Charter, Inc. v. Waukesha County,* 110 F.Supp.2d 891 (E.D.Wis.2000).

In *Cedarhurst,* the County required all owners who stored aircraft at the airport to buy fuel from a private fixed base operator who managed and operated the airport pursuant to a contract with the County. Owners were not permitted to fuel their own planes, and fuel vendors other than the fixed-base-operator were not allowed to do business at the airport. Cedarhurst contended that the County's policy violated federal antitrust law by monopolizing the fuel market at the airport. The County raised the defense of state action immunity.

The District Court rejected the County's defense and held that the state action immunity did not shield the County from the antitrust claim of Cedarhurst because the County failed to show that the anticompetitive conduct was authorized by a clear articulation of state policy. The Court based its decision on the case of *American Medical Transport of WI. Inc. v. Curtis–Universal Inc.,* 154 Wis.2d 135, 452 N.W.2d 575 (1990). *American Medical* involved an interpretation by the Wisconsin Supreme Court of a Wisconsin Antitrust Statute (Wis.Stat. § 133.03) and concluded that the Statute represented a "strong pro-competitive policy."

This Court is unwilling to accept the proposition urged by the Debtor that the holding of *Cedarhurst* represents the appropriate treatment of the state action immunity. The context and the interpretation of the federal antitrust legislation and its representation are binding authority on the subject. First, *Cedarhurst* ignores the basic and well established principle, that the reach and the scope of the federal antitrust legislation is governed by federal law. *Parker v. Brown, supra; Hallie v. Eau Claire, supra.* The Courts in both *Parker* and *Hallie* recognized that the state action immunity doctrine defense in a suit charging violation of the federal antitrust statute is a political subdivision of a state. The Court in *Parker* ruled that the Sherman Antitrust Act was intended to prohibit private restraints on trade, and it refused to infer in an intent to "nullify a state's control over its officers and agents" in activities directed by the legislature. *Parker,* 317 U.S. at 350, 63 S.Ct. 307.

Before discussing the several Florida cases all of which involved airport authorities, it should be pointed out that these anticompetitive conduct cases involved op-

eration, not by the Authority itself, but by a nongovernmental entity unlike the present instance, when the alleged illegal operation is conducted by the Authority itself.

Turning to the Florida Airport cases, the case of *Golta, Inc. v. Greater Orlando Aviation Authority*, 761 F.Supp. 778 (M.D.Fla.1991) is an illustration of the courts' dealing with the issue of state action immunity. In *Golta*, the Aviation Authority was created, such as, the Naples Airport Authority, by the Florida Legislature. The Authority in *Golta*, was granted broad nonspecific powers, including the ability to enter into contracts, to adopt reasonable rules and regulations for the safe and orderly operation of the Orlando Airport, and to exercise all the powers that Florida law grants to municipalities.

The *Golta* Court rejected the claim of antitrust violation by the Plaintiff that contended that the contract between the Authority and Mears Transportation Group ("Mears") was violating §§ 1, 2 of the Sherman Act because, it resulted in an unreasonable restraint of trade by controlling prices and eliminating competition. The Court held that a "[p]arty seeking the protection of state action immunity doctrine from federal antitrust claims has the burden of proving elements of the doctrine, but does not have to point to a specific legislation authorizing its anticompetitive conduct to prove that it acted in accordance with explicit state policy. . . ." *Id.* at 778.

In the case of *Commuter Transportation Systems, Inc., v. Hillsborough County Aviation Authority*, 801 F.2d 1286 (11th Cir.1986), the Eleventh Circuit Court's decision was based on the holdings of the Supreme Court in *Parker v. Brown, supra,* and *Hallie v. Eau Claire, supra.* The Supreme Court in *Hallie* upheld the immunity claim by the Authority from an antitrust attacked because the "challenged

activity was pursuant to a clearly expressed state policy." *Commuter Transportation Systems,* 801 F.2d at 1290. See also *General Rent–A–Car v. Roberts,* 1988 U.S. Dist. Lexis 18653 (S.D.Fla.1988).

■ In the case before this Court, the City of Naples Airport Authority Act, Laws of Florida, ch 69–1326 (the "NAA Act") Section 17 provides in Section 1 that the Authority shall have a "lien upon all aircraft landing upon any airport owned and operated by it for all fuel, landing fees and charges. . . ." *Id.* Section 4 of the NAA Act, authorized the Authority "to fix and revise from time to time, as well as to collect rates, fees and other charges for the use of or for the services and facilities furnished by the airport facilities." *Id.*

Furthermore, FAA Order 5190.6A expressly allows the Authority exclusive right to fuel, as opposed to, granting that right to a private party. The FAA Order leaves no doubt that airport proprietors, such as the Authority, exercise exclusive right to provide fuel and other services at the airport and must ensure control over prices charged for aeronautical services. See FAA Order 5190.A, § 4–14(c).

*Hallie, Golta,* and *Commuter Transportation* support the Authority's position that the Florida legislature foresaw and anticipated the course of action the Authority has taken in providing fuel service at the Airport. The statutory language outlined above clearly contemplates that the Authority may engage in the conduct at issue, as it is a foreseeable result of empowering the Authority to sell fuel and to fix and collect fees at levels sufficient to support the operations of the airport. NAA Act §§ 17(1), 4(i). The Florida legislature could not have anticipated that the Authority could do so without control of the market for fuel and other services. Under *Hallie* and its progeny, this is suffi-

cient to satisfy the "clear articulation" requirement for the application of state action immunity.

The ability of the governments to control prices of a wide array of services and goods under general police powers such as those granted to the Authority has long been recognized by the courts, where they bear a reasonable relationship to legitimate goals, such as protection against price gouging. E.g., *Nebbia v. New York,* 291 U.S. 502, 539, 54 S.Ct. 505, 78 L.Ed. 940 (1934) (price controls within the police power); *Miami Laundry v. Florida Dry Cleaning and Laundry Board,* 134 Fla. 1, 9–10, 183 So. 759 (1938) (price controls may be promulgated if determined to be in the public interest).

The Circuit Court of Collier County has already ruled that the Authority's fueling regulations were a valid exercise of the police power, after having received evidence that they advance a number of public interests, including protecting customers. (Final Judgment, pp. 568–69, 573). Indeed, the FAA requires that airports receiving federal aid will oversee the prices charged by the airport tenants to ensure the protection of the flying public.

Based on the authorities cited, this Court is satisfied the Debtor has no legally enforceable right under Section 1 or 2 of the Sherman Antitrust Act and the Authority is protected by the State Action Immunity, therefore, the Authority's Motion for Summary Judgment is well taken and the Authority is entitled to determination that the claims asserted in Count III and IV are barred by the doctrine of State Action Immunity as a matter of law.

## FLORIDA ANTITRUST ACT §§ 542.18, 542.19 AND 542.23 (Counts V and VI)

■ The Debtor's claim for injunctive relief set forth in Count V of the Second Amended Complaint is based on the factual allegations set forth in Count III of the Second Amended Complaint which according to the Debtor warrants granting injunctive relief and an award of attorneys' fees pursuant to Section 542.23 for violation of Sections 542.18 and 542.19 of the Florida Statutes. These sections are the carbon copy of Sections 1 and 2 of the Sherman Act.

The Debtor's claim for injunctive relief and attorneys' fees are sought pursuant to Section 542.23 of the Florida Statutes for the alleged violation of the Florida Antitrust Act, Section 542.19 of the Florida Statutes. The factual allegations set forth in this Count are identical with the factual allegations set forth in Count IV of the Debtor's Second Amended Complaint.

It should be evident from the foregoing that both claims are piggybacking on the Federal Antitrust Statutes, §§ 1 and 2 of the Sherman Act, plead by the Debtor in Counts III and IV. Since this Court has already concluded that the Authority is immune from antitrust violation claims, it follows that the Authority is entitled to the same state action immunity from the antitrust violation claims under the Florida Antitrust Act. However, one does not have to rely on this analogy to conclude that the Debtor has no viable claims against the Authority under the relevant Florida Statutes because Florida expressly provides in § 542.20 that any activity or conduct exempt from the provisions of federal antitrust statutes are also exempt under the Florida Antitrust Act §§ 542.18 and 542.19.

In the case of *Golta v. Greater Orlando Aviation Authority,* supra, the United States District Court for the Middle District of Florida held that, "Because [Defendants] are exempt from [Plaintiff's] federal antitrust claims, they are also exempt from the state antitrust claims." *Golta,* 761

F.Supp. at 782 (quoting *Auton v. Dade City,* 783 F.2d 1009 n. 1 (11th Cir.1986)). See also *Levine v. Central Florida Med. Affiliates, Inc.,* 864 F.Supp. 1175, 1186 (M.D.Fla.1994). *Shahawy v. Harrison,* 1987 U.S. Dist. LEXIS 14955, at *10 n. 4 (M.D.Fla. Apr. 16, 1987), *Williams Elec. Co., Inc. v. Honeywell, Inc.,* 772 F.Supp. 1225, 1235 (N.D.Fla.1991), *General Rent–A–Car, Inc. v. Roberts,* 1988 U.S. Dist. LEXIS 18653, at *19 (S.D.Fla. Sept. 15, 1998).

There is an additional reason why the Debtor's claims for injunctive relief cannot be granted as a matter of law. Section 542.23 of the Florida Statutes in subclause (3) specifically prohibits granting an injunctive or equitable relief pursuant to § 542.23 against—

> "... a local government or its officials or employees acting within the scope of their lawful authority, if the official conduct which forms the basis of the suit bears a reasonable relationship to the health, safety, or welfare of the citizens of the local government, unless the court finds that the actual or potential anti-competitive effects outweigh the public benefits of the challenged action."

Fla. Stat. ch. 542.235(3) (2004).

Based on the foregoing this Court is satisfied that the claims of the Debtor set forth in Counts V and VI, based on the alleged violation of the Florida Antitrust Act cannot be maintained as a matter of law.

## UNCONSTITUTIONAL IMPAIRMENT OF A CONTRACT (Count VII)

The claim by the Debtor in Count VII of the Second Amended Complaint is brought pursuant to Article I, Section 10 of the Florida Constitution and Article I, Section 10 of the United States Constitution. It is the contention of the Debtor that on February 17, 1997, the Authority granted a non-exclusive "Nonpublic Aircraft Fuels Dispensing Permit," to the Debtor (the "Fuel Permit") (Debtor's Exhibit E). This permit authorized the Debtor to dispense fuel into aircrafts owned or leased by the Debtor and also to its sub-tenants and other individuals or entities storing aircraft on premises leased by the Debtor from the Authority, as long as the sub-lease or storage agreement was for six (6) months or more. It is contended by the Debtor that the Authority revised its rates and charges, and that revision unlawfully impaired the obligations of the contracts between the Debtor and the Authority. It is contended by the Debtor that these rates and charges, put into effect on November 8, 2002, were not for the purpose of protecting health, safety and welfare of the public, but for the purpose of regaining the monopoly of the Authority of the fixed base operation services (the "FBO") at the Airport. Based on the foregoing the Debtor seeks an injunction to prohibit the Authority for the life of its leases and fueling permit from enforcing or passing any regulations which would impair the Debtor's rights under its contracts with the Authority.

■ Article I, Section 10 of the Constitution provides: "No State shall ...pass any ... Law impairing the Obligation of Contracts." Although the language of the Contracts Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the state to safeguard vital interest of its people. U.S.C.A. Const. Art. 1, § 10, cl. 1. It is beyond peradventure that the Contracts Clause does not operate to prohibit a state to exercise its sovereign rights of police power. *Allied Structural Steel Company v. Spannaus et al.,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978).

■ Even a cursory review of the cases dealing with this subject leaves no doubt

that the Contracts Clause prohibition to impair existing contract rights refers to state law and not by an action of an entity even though the entity happens to be an arm of the state. See *Allied,* 438 U.S. at 235, 98 S.Ct. 2716. (citations omitted); See also *Energy Reserves Group, Inc. v. Kansas Power and Light Company,* 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) (citations omitted). It would be an over simplification to limit the constitutional prohibition of impairment of contract rights to a statute and one would be less than candid not to admit it would equally apply to regulations promulgated pursuant to a specific statute.

In the decision of the District Court in the Southern District of Florida in the case of *Boca Raton Airport Inc. v. Boca Raton Airport Authority,* 2000 WL 963365 (S.D.Fla.), the Court recognized the principle that "[t]he Contracts Clause does not act to prevent the state from exercising its public powers. '[T]he interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected.' " (quoting *Keystone Bituminous Coal Assoc. v. DeBenedictis,* 480 U.S. 470, 503, 107 S.Ct. 1232, 1251, 94 L.Ed.2d 472 (1987)). *Id.* at *4.

In *Boca Raton* the Airport Authority agreed to terminate its right to develop 15 acres of usable airport land. However, notwithstanding the Authority enacted a resolution which provided that the construction and the development of the 15 acres to be contracted out to third parties. The Plaintiff charged that the resolution impaired the parties' contract in violation of the Contracts Clause of the United States Constitution. In rejecting this claim, the District Court held that the Authority "had a strong public interest in introducing competition and preventing the perpetuation of a monopoly at the Boca Raton Airport facilities." *Id.*

■ In the present instance, the record in the Circuit Court Injunction litigation actually involved litigation of the issues of the Authority's need to assure that the fueling operation is conducted to promote public health and welfare and that its ability to control the fuel prices was essential to assure that the Authority can live up to its obligation that the operation of the Airport is self supporting.

There is nothing in this record which would support the finding that the Authority's Notice of Termination of the Fuel Permit was an act pursuant to a statute or pursuant to a regulation promulgated under a statute. To elevate the act of terminating the Fuel Permit to a level of constitutional protection would extend the provisions of Article I, Section 10 of the both the Federal and the State Constitution to the general market place just because one of the parties involved is the state or an arm of the state.

This Court is satisfied that the framers of the Constitution never intended to prohibit states or agencies acting as arms of the state to exercise their contract rights in the context of a commercial transaction. For the reasons stated, this Court is satisfied that the Motion for Summary Judgment of the Authority is well taken and the Debtor has no viable and enforceable right against the Authority under the impairment of the Contracts Clause under both the Federal and State Constitution based on the termination by the Authority of the Debtor's Fuel Permit and its right to participate in the Pre–Purchase Fuel Program.

In sum, this Court is satisfied that the Authority is entitled to a partial summary judgment as to the claim set forth in Count VII.

## PROMISSORY ESTOPPEL
### (Count VIII)

It is the Debtor's contention that the Debtor expended substantial money and time developing its FBO at the Airport. The Debtor relied on the agreements and representation by the Authority that it would be able to fuel its own aircraft and additional aircraft under its long-term lease. It is the position of the Authority that the Debtor is precluded to litigate this issue of the validity of its claim based on promissory estoppel because the Circuit Court in the Injunction Action found that the issue was considered and ruled on by the Circuit Court and it is implicit in its findings set forth in the Final Judgment. However, as pointed out earlier, this Court expressly declined to consider the validity *vel non* of the Debtor's Lease Agreement with the Authority and made no findings concerning that the defense of promissory estoppel was inapplicable and controlling under the facts.

Despite the fact that the Circuit Court expressly found that there was no evidence before that Court which would support the findings that the Authority ever approved, authorized, sanctioned or condoned any violation by the Debtor of any terms of its Fuel Permit, this Court is satisfied that this finding by the Circuit Court is insufficient to support the defense of issue of claim preclusion of the promissory estoppel claim raised in this Count. This is so because this record is devoid of any evidence that the Circuit Court considered the claim that the Debtor relied to its detriment and expended substantial funds on reliance of the alleged inaction of the Authority. It is the contention of the Debtor that it suffered as a result of the inaction of the Authority and its rights were never litigated in the Injunction Action. Thus, the Debtor is not precluded to litigate this issue based on the doctrine of issue preclusion or collateral estoppel. Therefore, the Authority is not entitled to summary judgment on the claim set forth in Count VIII but only to the extent of the issue as outlined above.

## CIVIL RIGHTS CLAIMS 42 U.S.C.
### § 1983 (Counts IX and X)

In support of these claims the Debtor contends that the Authority, Theodore D. Soliday and Commissioner Eric West violated the Federal Aviation Act (the "FAAct") 49 U.S.C. § 40103(e) and the Airports and Airways Improvement Act (the "AAIA") 49 U.S.C. § 47107(a)(4), therefore, it is entitled to recover damages based on 42 U.S.C. § 1983 (Civil Rights Act). Prior to the enactment of this far reaching legislation there was no federal remedy for violation of the Constitution. Neither were there any provisions for a private remedy for violations of federal statutes or regulations promulgated under the particular statute unless the statute in question provided for an enforceable federal right.

Since the enactment of the Civil Rights Act, attempts have been made to expand the reach of the legislation. This is possibly based on the not very well recognized view that there shall be a remedy for each wrong. Therefore, even in the absence of a specific provision for a private federal right, parties who claim to be the intended beneficiaries of the statute or fall within the "zone of interest," do have a viable federal right and a remedy for a violation of a federal statute or for violation of an action by a federal agency of a regulation promulgated under the statute involved. *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309

(2002); *31 Foster Children v. Bush*, 329 F.3d 1255, 1268 (11th Cir.2003). "In order to have a viable cause of action under § 1983 based on the violation of federal statute, however, a plaintiff must establish that the statute allegedly violated gives the plaintiff enforceable rights." *31 Foster Children*, 329 F.3d at 1268. "[A]nything short of an unambiguously conferred right" will not support a cause of action. *Id.* (quoting *Gonzaga*, 536 U.S. at 283, 122 S.Ct. 2268).

■ The task of establishing a private right of enforcement of statutes enacted under Congress' spending power—such as the exclusive rights provisions of FAAct and AAIA—is especially demanding. "In cases brought to enforce legislation enacted pursuant to Congress' spending power ... Congress must 'speak with a clear voice' and manifest an 'unambiguous' intent to confer individual rights before federal funding provisions will be read to provide a basis for private enforcement." *Id.* "In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Id.* (quoting *Pennhurst State School v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)).

■ Private plaintiffs do not have enforceable federal rights merely because they are the intended beneficiaries of statute or fall within its zone of interest. *Gonzaga*, 536 U.S. at 283, 122 S.Ct. 2268; *31 Foster Children*, 329 F.3d at 1269. The critical task is to determine the intent of Congress regarding the provision of enforceable federal rights. In addition, a plaintiff must show that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would

strain judicial resources and that the provision giving rise to the asserted right is couched in mandatory terms rather than precatory terms. *31 Foster Children*, 329 F.3d at 1269. "If the text and structure [of the statute] 'provide no indication that Congress intends to create new individual rights, there is no basis for a private suit.'" *Id.* at 1270. (quoting *Gonzaga*, 536 U.S. at 286, 122 S.Ct. 2268).

■ Federal Circuit Courts of Appeal and almost all of the Federal District Courts that have considered whether Section 1983 provides a remedy for alleged violations of the FAAct and the AAIA, including the exclusive rights provisions, have concluded that Congress did not intend to provide such a remedy. See *Four T's Inc. v. Little Rock Municipal Airport Commission*, 108 F.3d 909, 916 (8th Cir. 1997); *Montauk–Caribbean Airways v. Hope*, 784 F.2d 91, 98 (2d Cir.1986); *Tutor v. City of Hailey*, 2004 WL 344437 *9–10 (D.Id., Jan.20, 2004); *O'Connell Management Co., Inc. v. Massachusetts Port Authority*, 744 F.Supp. 368, 375 (D.Mass. 1990); *Northeast Jet Center v. Lehigh–Northampton Airport Auth.*, 767 F.Supp. 672, 677 (E.D.Pa.1991); *Norwood Aviation v. Boston Metropolitan Airport*, 1988 WL 148779 *3 (D.Mass.1988); *Hill Aircraft & Leasing Corp. v. Fulton County*, 561 F.Supp. 667, 673 (N.D.Ga.1982); *Cedarhurst Air Charter v. Waukesha County*, 110 F.Supp.2d 891 (E.D.Wis.2000).

In addition, courts addressing the Section 1983 issue, several Circuit Courts including the Eleventh Circuit, have discussed the issue of whether or not the FAAct and the AAIA created a direct, or at least an implied right of action and concluded that it did not. See *Arrow Airways v. Dade County*, 749 F.2d 1489, 1491 (11th Cir.1985) (AAIA); *Northwest Airlines v. County of Kent*, 955 F.2d 1054 (6th Cir.1992) (AAIA), aff'd on other grounds,

510 U.S. 355, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994); *Interface Group, Inc. v. Massachusetts Port Authority*, 816 F.2d 9, 15 (1st Cir.1987) (FAAct); *Montauk*, 784 F.2d at 97–98.

The Eleventh Circuit's holding in *Arrow Airways*, that there is no direct private right of action is especially significant in light of the Supreme Court's recent holding in *Gonzaga* that "[a] court's role in discerning whether personal rights exist in the § 1983 context should therefore not differ from its role in discerning whether personal rights exist in the implied right of action context." *Gonzaga*, 536 U.S. at 285, 122 S.Ct. 2268. In light of this holding, the *Arrow Airways* case precludes finding a Section 1983 cause of action for violation of the AAIA, and the same logic would apply to the FAAct.

The case of *Hill Aircraft and Leasing Corp. v. Fulton County*, 561 F.Supp. 667 (N.D.Ga.1982), the District Court concluded that Congress did not intend a designation of fixed-based-operators as the intended beneficiaries of the exclusive rights provision of the FAAct. *Id.* at 673. In addition, the Court pointed out that because Congress established the private remedy expressly for air carrier certification requirements, the absence of such provisions providing private rights of actions for the exclusive rights provision of the act suggested that Congress did not intend one. *Id.*

The primary and the only authority supporting the proposition urged by the Debtor, that it has a viable Civil Rights claim under Section 1983, is the case of *Cedarhurst Air Charter v. Waukesha County*, 110 F.Supp.2d 891 (E.D.Wis.2000). *Cedarhurst* is clearly at odds with the vast majority of federal courts that have addressed the issue. It should be noted that in *Cedarhurst* there was no decision on the merits but merely a denial of a Motion to Dismiss filed by the Airport in a suit which also involved the exclusive rights claims brought by a fixed-based-operator. *Cedarhurst* urged in opposition to the Motion to Dismiss that the Plaintiff's ability to enforce federal aviation statutes through Section 1983 was "not clearly settled." Based on this the District Court denied the Motion to Dismiss.

The proposition urged by the Plaintiff in *Cedarhurst* that the issues had not been settled is contradicted by the majority of cases that dealt with this subject, including the decision of the Eleventh Circuit which leaves no doubt that there is no direct private right of action for violation of the Statutes involved. *Arrow Airways*, supra. Even more significant to refute the claim of the Plaintiff in *Cedarhurst* is the decision of the Supreme Court in *Gonzaga*, supra.

This Court is satisfied that the holding in *Cedarhurst* is not persuasive and certainly has no binding effect on this Court in light of the Supreme Court decision in *Gonzaga*, supra, and in *31 Foster Children*, supra. The District Court in *Cedarhurst* based its decision on the premise that Congress intended the two statutes, FAAct and AAIA, to benefit private plaintiffs. The Supreme Court and the Eleventh Circuit rejected this approach and stressed that the Plaintiff does not have a private right of action under Section 1983 merely because they are the intended beneficiary of the Statues or they fall within its zone of interest. *Gonzaga*, 536 U.S. at 283, 122 S.Ct. 2268; *31 Foster Children*, 329 F.3d at 1269. *Cedarhurst* also failed to consider the cases of *Hill Aircraft*, supra, and *Anderson v. USAir, Inc.*, 818 F.2d 49 (D.C.Cir.1987).

■ In Count IX the Debtor contends that the so-called AP–4 Agreement which was entered by the Authority with the

Federal Aviation Authority pursuant to the FAAct and the AAIA, bars the Authority from exercising the right of an airport proprietor to be the exclusive provider of fuel at the Airport. One cannot seriously challenge or dispute that the AP–4 Agreement does not prohibit the Authority from exercising an exclusive right to provide fuel. The applicability of this provision against granting an exclusive right to fuel, obviously has no application or relevance in the present instance. The Authority is not *granting* anyone an exclusive right to fuel aircrafts which would be clearly a violation of the AP–4 Agreement. In this case it *retains* an exclusive right to fuel aircrafts at the airport. Statute 49 U.S.C. § 47107(a)(4) is totally silent as to whether or not the owner of the airport itself may exercise the exclusive right to fuel aircraft at the Airport.

Even if the statutes under consideration are silent, or at least ambiguous, regarding the right of an airport owner to control the sale of fuel, the interpretation of this provision by the FAA leaves no doubt that the owner has such a right. FAA Order 5190.6A interprets the provisions concerning the exclusive right of 49 U.S.C. § 40103(e) (codified from the Civil Aeronautics Act of 1938 and FAAct), the grant assurances and the AP–4 Agreements. Order 5190.6A at Ch. 3, § 1. FAA's interpretation of these provisions states explicitly that airport proprietors like the Authority may exercise the exclusive right to provide fuel:

> The owner of public-use airport (public or private owner) may elect to provide any and all of the aeronautical services needed by the public at the airport. In fact, *the statutory prohibition against exclusive rights does not apply* and they may exercise but not grant the exclusive right to conduct any aeronautical activity.

FAA Order 5190.6A § 3–9(d) (emphasis added).

■■ In Count X the Debtor alleges a violation of the exclusive rights provisions resulting from an alleged prohibition on the ability to self-fuel. Nowhere in the Complaint does the Debtor allege that it actually owns or has owned any aircraft that it has self-fueled in the past or would self-fuel now. Indeed, none of the attached schedules that the Debtor has submitted in this bankruptcy, of which this Court may take judicial notice, reflect the ownership of any aircraft. Accordingly, the Debtor has failed to establish that it falls into any class that would hold the federal right to self-fuel, that is, assuming any could arise from the exclusive rights provisions of FAA's guidance that would allow it to avail itself of Section 1983. Without any owned aircraft, there is no real imminent injury and, thus, case or controversy regarding the question of self-fueling. See *31 Foster Children*, 329 F.3d at 1265 (a plaintiff only has standing if an alleged injury is "imminent" or "real and immediate" and not "conjectural" or hypothetical).

In addition, the regulations promulgated in November 2002, which are the basis for Count X of the Debtor's Complaint, did not revoke any privilege the Debtor may have had to self-fuel. These regulations may be judicially noticed by this Court as public records of the Authority that have been cited by both the Debtor and the Authority in this Case. See *Zimomra v. Alamo Rent–A–Car, Inc.*, 111 F.3d 1495, 1504 (10th Cir.1997). A review of the Authority's regulation confirms that the November 2002 regulations provide for the ability of persons holding fuel permits to self-fuel, consistent with FAA guidance. Thus, pursuant to FAA guidance "[a] [Fuel] Permit Holder may only dispense aviation fuel to Permit Holder's Aircraft or

aircraft over which Permit Holder exercises Operational Control." (Defendant's Ex. "C" at 3).

Based on the foregoing, this Court is satisfied that there is no basis for the Debtor's Count IX and X (Civil Right's Claims). Therefore, City of Naples Airport Authority, Theodore D. Soliday and Commissioner Eric West are entitled to summary judgment concerning the claims set forth in Counts IX and X.

In light of the foregoing, this Court is satisfied that it is unnecessary to rule on the Authority's Motion for Judgment on the Pleadings as to the Second Amended Complaint.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Summary Judgment and Judgment on the Pleadings with respect to Second Amended Complaint (Doc. No. 66) be, and the same is hereby, granted in part and denied in part. It is further

ORDERED, ADJUDGED AND DE-CREED that City of Naples Airport Authority's Motion for Summary Judgment on the claims specifically set forth in Count I (Fuel Permit) and Count II (Pre–Purchase Fuel Program), pursuant to the doctrine of claim preclusion (*res judicata*) and the doctrine of issue preclusion (*collateral estoppel*) of the Second Amended Complaint be, and the same is hereby, granted and the claims of the Debtor set forth in Counts I and II shall be dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DE-CREED that City of Naples Airport Authority's Motion for Summary Judgment as to the claims set forth in Count I and Count II of the Second Amended Complaint, specifically, the Lease Agreement in both Counts between the City of Naples Airport Authority and Jet 1 Center, Inc.,

be, and the same is hereby, denied without prejudice. It is further

ORDERED, ADJUDGED AND DE-CREED that City of Naples Airport Authority's Motion for Summary Judgment as to the claims asserted in Counts III (Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1), IV (Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2), V (Florida Antitrust Act, Fla. Stat. § 542.18) and VI (Florida Antitrust Act, Fla. Stat. § 542.1) of the Second Amended Complaint be, and the same is hereby, granted and the claims shall be dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DE-CREED that City of Naples Airport Authority's Motion for Summary Judgment as to the claim set forth in Count VII (Unconstitutional Impairment of Contract) of the Second Amended Complaint be, and the same is hereby, granted and the claim shall be dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DE-CREED that City of Naples Airport Authority's Motion for Summary Judgment as to the claim set forth in Count VIII (promissory Estoppel) of the Second Amended Complaint be, and the same is hereby, denied without prejudice. The issue of whether or not the Debtor justifiably relied on the inaction of the Authority to enforce its rights under the contracts resulted in the Debtor expending substantial funds to its detriment, shall be set by separate order for a status conference. It is further

ORDERED, ADJUDGED AND DE-CREED that City of Naples Airport Authority's Motion for Summary Judgment as to the claims against the City of Naples Airport Authority, Theodore D. Soliday and Commissioner Eric West in Count IX (42 U.S.C. § 1983, Exclusive Rights) and

Count X (42 U.S.C. § 1983, Self–Fueling Rights) of the Second Amended Complaint be, and the same is hereby, granted and the claims are dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DE-CREEED that a separate final judgment shall be entered in accordance with the foregoing. It is further

ORDERED, ADJUDGED AND DE-CREED that a status conference shall be held on March 10, 2005, beginning at 10:00 a.m. at the United States Bankruptcy Courthouse, Fort Myers, Federal Building and Federal Courthouse, Room 4–117, Courtroom D, 2110 First Street, Fort Myers, Florida, to consider the unresolved issue relating to the Debtor's claim set forth in Count VIII.